GOVERNMENT OF THE VIRGIN ISLANDS

v.

ROBERTO CRUZ, Appellant

No. 72-1274

United States Court of Appeals

Third Circuit

Argued January 31, 1973

Filed April 25, 1973

LEROY A. MERCER, ESQ., Christiansted, St. Croix, V.I., *for appellant*

JULIO A. BRADY, ESQ., Assistant U.S. Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before VAN DUSEN, ROSENN and HUNTER, *Circuit Judges*

HUNTER, *Circuit Judge*

The defendant Roberto Cruz was convicted on February 10, 1972, by a jury in the district court of the Virgin Islands of selling heroin in violation of 19 V.I.C. § 604(a). His motion for a judgment of acquittal or, in the alternative, for a new trial was denied by the district court, and he was sentenced to ten-to-fifteen years in prison with a special three year parole term in addition thereto. 19 V.I.C. § 604(b)(1)(A). This appeal followed and we affirm.

A brief summary of the evidence is appropriate. On October 6, 1971, the Joint Narcotics Strike Force on St. Croix employed one Carlos Encarnacion to purchase narcotics from suspected pushers and to be available as a witness against them at trial.[1] Detective Jose Perez, head of the St. Croix Strike Force, testified that Encarnacion was informed on October 8, 1971 that he was to attempt to make a buy from one of four men, including the defendant, the next night during a Puerto Rican and Cruzan Friendship Day celebration at a lagoon near Christiansted. At about 8:00 p.m. on October 9, Encarnacion was strip searched by the police and given fifty dollars. He was then driven to the lagoon where he saw Cruz whom he knew from a methadone program which they both attended. According to Encarnacion, he approached Cruz who was with a woman and said "hello, how is everything," whereupon Cruz asked him if he wanted to buy any drugs. Encarnacion responded "yes", and he and the defendant went into a parking lot where Encarnacion purchased five decks of heroin for fifty

---

[1] Encarnacion was a convicted forger who was apparently also under indictment for at least two other felonies during the time he was working for the Strike Force. He had been a drug addict for several years, and it is unclear from the evidence whether he was still an addict in the fall of 1971. He was hospitalized for a heroin overdose about three months before this trial began, but Dr. De Chabert, head of the methadone treatment program which Encarnacion had been attending since early 1969, testified that Encarnacion was de-toxified and not an addict at the time of trial.

dollars. After smoking a marijuana cigarette with Cruz, Encarnacion walked back to where Perez was waiting and gave him the five heroin decks. Encarnacion was then taken a short distance away and was again strip searched with nothing being found. Patrolman Jackson, who trailed Encarnacion at the Lagoon, testified that he observed the transaction with Cruz but could not see how much money changed hands.

The defendant admitted selling heroin to Encarnacion, but he argued at trial that he was illegally entrapped into doing so. According to Cruz, on the day before the sale he, Encarnacion and a friend named Tomas Robles met after their methadone program and decided to go to a parade ground to smoke marijuana. Encarnacion shared some marijuana with them, and then he asked the defendant to get him some heroin because methadone was not helping him. Cruz testified that at first he refused and told Encarnacion that he did not want to be involved with drugs any more, but that he eventually agreed to do it after Encarnacion kept saying how "bad" he felt. Cruz said that he then went to a pusher who gave him some heroin on credit, and that he sold this heroin to Encarnacion without profit for twenty-five dollars. Robles was a witness for the defense and testified that on the day before the sale he heard Encarnacion ask Cruz to get drugs for him. Mrs. Cruz also testified that Encarnacion approached her husband at the lagoon and asked him "did you bring the tin."

As rebuttal, the government recalled Encarnacion who denied having requested the defendant to get heroin for him on the day before the sale. In addition, detective Perez was recalled and he testified that it was his decision to have Encarnacion attempt to make a purchase at the lagoon on October 9 and that Encarnacion was not informed of this plan until between nine and ten o'clock the *night before.*

■ Defendant's first contention on this appeal is that he was deprived of a fair and impartial jury trial since a majority of the jurors had also been jurors in at least one of several previous narcotics cases involving the same informer, Carlos Encarnacion.[2] During the jury voir dire, the defendant made two oral motions which were denied by the district court: first, to disqualify for cause those members of the jury array who had served in any prior trial where Encarnacion had testified; and second, to disqualify for cause those members of the array who had served in either of two very recent narcotics trials where Encarnacion had testified and where the defendants had been found guilty. The rationale behind both of these motions was the defendant's belief that jurors who had sat on such earlier cases had already formed an impression about the credibility of Encarnacion. Prior to these motions, the district court had determined which members of the array had participated in the earlier cases, and both the court and the defendant's attorney had asked them collectively whether they could judge the evidence in this case without reference to any other trial. Only one person indicated that his judgment would be influenced by what he had heard before, and he did not sit in this case. Although the defendant claims that it was prejudicial error to deny his motions, we recently decided in Government of the Virgin Islands v. De Jesus, 9 V.I. 588 (3d Cir. 1973),[3] and Government of the Virgin Islands v. Hendricks, 9 V.I. 597 (3d Cir. 1973) that the mere fact that a juror has sat on a prior case involving similar issues and some of the same witnesses does not, absent

---

[2] In his brief at 5–7, defendant also contends that he moved the court to disqualify those members of the panel who had sat on recent narcotics cases involving the same police officers as well as the same informer. Our examination of the transcript of the jury voir dire reveals that defendant's motion in this regard referred only to the informer and not to the police officers. Transcript of the Voir Dire at 15–16. Consequently, we have limited our discussion to the motion that was actually made.

[3] This case was decided with Government of the Virgin Islands v. Williams, 9 V.I. 588 (3d Cir. 1973).

some showing of resulting prejudice, disqualify the juror. Since there was no showing of actual prejudice here, we reject the defendant's contention that the district court erred in its rulings on this point.

■ A second argument advanced by the defendant is that the trial judge wrongfully denied his motion for a mistrial after detective Perez testified on redirect examination that it would be impossible to use Encarnacion again because he would be shot. The specific question and answer occurred as follows:

Prosecutor: "Detective Perez, why is it that you would not use Encarnacion again?"

Perez: "It is impossible to use Mr. Encarnacion again because of what is going to happen, he is going to get shot, he is going to get killed on the street."

The defense immediately objected to this answer, and the trial judge ordered it struck from the record and cautioned the jury to disregard it. The defense then asked for a side bar conference and moved for a mistrial, but the trial judge refused to grant the motion on the ground that he did not believe that the answer was overly prejudicial to the defendant.

On this appeal, the defendant claims that detective Perez' statement caused him irreparable harm and that the trial judge therefore abused his discretion in denying a mistrial. We disagree. During cross-examination, defense counsel questioned Perez at some length about the number of cases on which Encarnacion had worked, the amount he was paid, and whether or not he would be used in the future as an informer. On redirect, the government asked Perez to explain why Encarnacion would not be used again. The wording of his response was unfortunate, but it made no reference to the defendant in any way. In view of this, and considering the fact that the jury already knew from the cross-examination that Encarnacion was an informer in at

589

least seven different narcotics investigations, we do not think that Perez' reply prejudiced the defendant's substantial rights. Consequently, we conclude that the trial judge's curative instructions were proper and that a mistrial was not necessary. See, e.g., Leonard v. United States, 386 F.2d 423 (5th Cir. 1967).

■ The defendant next urges that the evidence was insufficient to support a conviction since he established a defense of entrapment which was not refuted beyond a reasonable doubt by the government. Since the jury returned a verdict of guilty, it is fundamental that we must view the evidence in the light most favorable to the government. E.g., United States v. Miles, No. 71-1465 (3d Cir. September 29, 1972); United States v. Hamilton, 457 F.2d 95 (3d Cir. 1972); United States v. De Cavalcante, 440 F.2d 1264 (3d Cir. 1971). After reviewing the record, we think that the jury could easily have disbelieved the defendant's story and found no entrapment. The defendant does not appear to have been a persuasive witness, and his testimony lacked credibility in several significant respects. For example, he insisted that he and Encarnacion had been friends since they were "small," but he did not know where Encarnacion lived as a youth and had never been to his house. Another notable inconsistency was the defendant's testimony on direct examination that he got drugs for Encarnacion because he looked "bad" or "sick," while on cross-examination he stated that Encarnacion was "not so sick like a junkie" and admitted that he procured the heroin and sold it to Encarnacion because he was a "good friend." In addition, detective Perez testified that he did not inform Encarnacion of the plan to attempt a purchase at the lagoon until between 9:00 p.m. and 10:00 p.m. the night before, yet the defendant said that Encarnacion approached him earlier on that same day. In the absence of any significant evidence to support the defendant's story,

and taking all the evidence into consideration, we conclude that the jury could find that the government proved beyond a reasonable doubt that no entrapment occurred in this case.

The next contention raised by the defendant concerns the district court's charge on entrapment. Defendant's requested instruction number eight[4] was specifically approved in Pratti v. United States, 389 F.2d 660 (9th Cir. 1968), which held that when entrapment is an issue, the jury must be charged that the burden of showing that there is no entrapment is on the government. Instead of giving this instruction, the district court charged the jury as follows:

"In determining whether any fact or issue has been proven by a preponderance of the evidence in the case the Jury may, unless otherwise instructed—and I do not otherwise instruct you—the Jury may consider the testimony of the witnesses regardless of who may have called them and all exhibits received in evidence. If then the Jury should find *beyond a reasonable doubt* from the evidence in the case that before anything at all occurred respecting the alleged offense involved in the case, the accused was ready and willing to commit a crime, such as charged in the information, whenever opportunity was offered and that the Government agents did no more than offer the opportunity, the accused is not entitled to the defense of unlawful entrapment.

"*On the other hand, if the Jury should find from the evidence in this case that the accused had no previous intention or purpose to commit any offense of the character here charged and did so only because he was induced or persuaded by some agent of the Government—and in this case it would have been the informant—then the defense of unlawful entrapment is a good defense and the Jury should acquit the accused.*" (Emphasis added.)

---

[4] This instruction stated:

"A COMPLETE DEFENSE to the charges is that of entrapment. It is the DUTY of the Government to satisfy you—BEYOND A REASONABLE DOUBT—that the defendant was not entrapped into committing the acts which, if there were no entrapment, would constitute the offense(s).

"If the Government fails to convince you *beyond a reasonable doubt* that the defendant was not entrapped into committing the offense(s), then you must find the defendant not guilty on both counts."

In Notaro v. United States, 363 F.2d 169 (9th Cir. 1966), the case upon which Pratti is based, the Ninth Circuit held that an instruction almost identical to the one above constituted reversible error because it could have created the erroneous impression in some jurors' minds that the accused carried the burden of proof as to the positive elements of an entrapment defense. Moreover, the Notaro court said that it must be made clear to the jury that the accused is "entitled to be acquitted if, from the evidence, the jury, because of the entertainment of reasonable doubt, should be unable to 'find' that the necessary elements of the defense had not been excluded." 363 F.2d at 176. This must be made explicit even though the jury is properly informed in a general instruction as to the burden of proof which rests upon the prosecution.

■ Although Notaro has not been specifically adopted by this Circuit, we would follow it and reverse the district court here if the defendant had timely objected to the court's charge as required by Rule 30, Fed. R. Crim. P.[5] While the defendant acknowledges that he did not object to the entrapment charge after it was read to the jury, he argues that there was no point in doing so since he had al-

[5] It should be noted that the Devitt and Blackmar instruction on entrapment now conforms with the Notaro approach. See the last two paragraphs of 1 E. Devitt and C. Blackmar, Federal Jury Practice & Instructions, § 13.13 (2d ed. 1970), which read as follows:

"If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as charged in the indictment, whenever opportunity was afforded, and that Government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

"On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some officer or agent of the Government, then it is your duty to acquit him."

This is the type of instruction which should be used in the future by district courts in this circuit when entrapment is offered as a defense. See generally United States v. Silver, 457 F.2d 1217 (3d Cir. 1972), which deals comprehensively with other aspects of a proper entrapment charge.

ready made his objections known in chambers. Aside from the fact that we can find no in-chambers record to support defendant's claim, we cannot permit Rule 30 to be circumvented in this way. If on appeal a party intends to assert errors in the charge, he must lay the proper foundation by taking exceptions in the trial court before the jury leaves to begin its deliberations. Otherwise, Rule 30 precludes us from considering his arguments unless plain error exists. Rule 52(b), Fed. R. Crim. P.

 The defendant next asserts that it was in fact plain error for the district court not to charge in conformance with Notaro. This argument, however, was rejected in United States v. Conversano, 412 F.2d 1143 (3d Cir. 1969), where this court, in the face of a similar entrapment charge not excepted to, declined to invoke the plain error rule.[6] Accord, United States v. Levin, 443 F.2d 1101 (8th Cir. 1971), and Esposito v. United States, 436 F.2d 603 (9th Cir. 1970). Since we believe that the present entrapment charge, if taken as a whole, did not mislead the jury, we see

---

[6] In the cited case, this court, speaking through Judge Ganey, said:

"... Although he charged that the burden was on the prosecution to prove beyond a reasonable doubt that defendant was guilty of each element of the crime for which he was accused, he did not tell them that this same burden was also on the Government to establish that entrapment did not occur. However, no point for charge was submitted concerning it *nor was any objection made to the charge of the court at the close thereof,* and we see no reason, under these circumstances, to invoke the Plain Error Rule, Federal Rule of Criminal Procedure 52(b), and, accordingly, *absent any objection by the defendant, no substantial rights of his were affected as to warrant consideration without such objection.* Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Reid v. United States, 334 F.2d 915–917 (C.A. 9, 1964); Martinez v. United States, 300 F.2d 9–10 (C.A. 10, 1962).

"While it has been held that the burden is on the Government to prove beyond a reasonable doubt that the defendant was not entrapped when that defense is properly raised, United States v. Landry, 257 F.2d 425 (C.A. 7, 1958), it also has been held that the trial court's refusal to so charge upon request is reversible error, Pratti v. United States, 389 F.2d 660 (C.A. 9, 1968), *but we reiterate that since no objection to the charge on this point was made, we, therefore, must deem the general instructions given on the burden of proof to be broad enough to have covered the issue of entrapment.* United States v. Salas, 387 F.2d 121 (C.A. 2, 1967). (Emphasis added.) 412 F.2d at 1149.

no reason to depart from our position in Conversano. Consequently, we find that the defendant has not established that the district court committed plain error in refusing to give his requested instruction number eight.[7]

■ In his reply brief, the defendant makes the additional argument that the district court's charge on entrapment was improper because it contained the phrases "lawful entrapment" and "unlawful entrapment." Since the defendant did not object to the court's charge on this point, and since he requested an instruction with the same phrases, he can only prevail if the use of these phrases constituted plain error. We conclude that it did not. Defendant relies on United States v. Hayes, 441 F.2d 542 (10th Cir. 1971), where the Tenth Circuit found that a trial judge committed plain error in instructing a jury regarding a concept of "lawful" versus "unlawful" entrapment. Hayes is distinguishable from the present case, however, because in Hayes the district court failed to follow earlier Tenth Circuit decisions which had held that it was erroneous to use the word "unlawful" preceding entrapment in a jury charge. Martinez v. United States, 373 F.2d 810 (10th Cir. 1967), and Garcia v. United States, 373 F.2d 806 (10th Cir. 1967). In the Third Circuit, on the other hand, there are no such precedents, and there is even dicta approving the "lawful-unlawful" distinction. United States v. Laverick, 348 F.2d 708 (3d Cir. 1965). Consequently, although we believe that it would be preferable to avoid phrases like "lawful entrapment" and "unlawful entrapment" when charging a jury, we do not think that their use amounted

---

[7] We agree with the Ninth Circuit that jury instructions on entrapment rise to the level of plain error only if "they are so vague and ambiguous as to permit the jury to misinterpret the allocation of the burden and quantum of proof." Pulido v. United States, 425 F.2d 1391, 1394 (9th Cir. 1970). We are satisfied in the present case that the entrapment instructions, if taken as a whole, set out proper standards and did not confuse the jury.

to plain error so as to warrant consideration in the absence of a timely objection.[8]

██ Defendant next urges that the sentence which he received—ten to fifteen years in prison plus a special three year parole term—was excessive and disproportionate to the offense. While this sentence is a long one, it is within the limits determined by the legislature and, therefore, not subject to review here. Government of the Virgin Islands v. Hendricks, No. 72-1911 at p. 7 (3d Cir. April 3, 1973), and the cases cited therein. We note, however, that defendant may apply under F.R. Crim. P. 35 for a reduction of sentence after the issuance of this court's mandate.

The defendant also argues on this appeal that the district court improperly admitted the testimony of the Assistant Attorney General of the Virgin Islands and that a conviction cannot be obtained on the testimony of a convicted forger (Encarnacion) who has other felony charges pending against him. After considering the record, the briefs and oral argument, we reject these contentions as being without merit.

The judgment of the district court will be affirmed.

---

[8] We note that the present Devitt and Blackmar instruction on entrapment makes no reference to "lawful entrapment." 1 E. Devitt and C. Blackmar, supra at note 2.