**UNITED STATES of America**

v.

**Leonard WATSON a/k/a "Step", Appellant.**

**No. 73-1489.**

United States Court of Appeals, Third Circuit.

Argued Oct. 26, 1973.

Decided Dec. 20, 1973.

David A. Garfunkel, Defender Assn. of Philadelphia, Philadelphia, Pa., for appellant.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before McLAUGHLIN, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal from a narcotics conviction raises the question of whether the trial court committed reversible error when it instructed the jury, in a bifurcated charge on the entrapment defense, that the defendant had the burden of

proving the Government induced the criminal activity. Since we find that the defendant raised sufficient evidence of entrapment to be entitled to an instruction on entrapment, and that the bifurcated charge was improper, we reverse as to all counts on which defendant was convicted except Count III.

## I. The Contentions

Watson was tried on a total of six counts involving distribution of heroin, possession with intent to distribute, illegal use of communications facilities, and conspiracy to distribute.[1] He took the stand, admitting most of the acts alleged and raising entrapment as his principal defense. Without objection by the Government,[2] the trial court granted defendant's request for an entrapment charge.

The first five paragraphs of the charge conform to the suggested language in 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.13 (2d Ed. 1970), which we approved in Government of the Virgin Islands v. Cruz, 478 F.2d 712, 717 n. 5 (3d Cir. 1973). The dispute arises from the next paragraph in the charge. It stated:

> The question of entrapment involves two issues. The first is whether the defendant was led or induced to commit the crime by anyone acting for the Government. That is, did the Government initiate the criminal transaction? On this issue the *defendant has the burden of proof.* [Emphasis supplied.]

The charge went on to say that the defendant had to prove by a preponderance of the evidence Government initiation of the criminal transaction; if such inducement were shown, then at that point the burden was on the Government to prove beyond a reasonable doubt that the defendant was ready and willing to commit the crime without persuasion, i. e., that he had a propensity to commit the crime. The final paragraph of the charge stated:

> As I have instructed you, the Government has the burden of proof. To sustain its burden, the Government must prove its case beyond a reasonable doubt. There is no burden on the defendant to introduce any evidence or to convince you of any fact, which, if true, would be a defense to the crime charged in the indictment. It is sufficient for a verdict of not guilty if, from all the evidence presented, or the lack of it, a reasonable doubt exists in your minds as to the guilt of the defendant.

Defendant's counsel excepted to the entrapment charge on the ground that the burden of proving inducement should not be on the defendant. Defendant was convicted on five of the six counts in the indictment, and contends on appeal that the conviction must be reversed because the entrapment charge was improper.

The Government first contends that we need not decide the propriety of the entrapment charge because Watson was not entitled to the charge on the evidence adduced; thus, he could not have been prejudiced. United States v. Bishop, 367 F.2d 806, 809 (2d Cir. 1966). Cf. Lopez v. United States, 373 U.S. 427,

1. Counts I and II involved possession with intent to distribute, and knowing and intentional distribution, on March 22, 1972. Count III involved intentional use of a telephone in facilitating the intentional distribution of heroin on January 5, 1972. Count IV is not in issue, since Watson was acquitted on this count. Counts V and VI involved intentional use of a telephone to facilitate distribution, and conspiracy to distribute, on March 31, 1972. 21 U.S.C. §§ 841(a)(1), 843(b), 846. He was sentenced on Count I to a prison term of ten years and given suspended sentences or parole on the other counts on which he was convicted. 436–437, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

2. Although the Government stated at oral argument that its failure to object to the giving of the charge was merely tactical, we note that Government counsel in his closing argument to the jury conceded that Watson's testimony had raised the defense of entrapment and had made the defense a question of fact for the jury.

■ We first note that the Government is clearly correct in its contention as to Count III of the indictment. The count alleges that on or about January 5, 1972, Watson violated 21 U.S.C. § 843 by knowingly and intentionally using a telephone to facilitate the knowing. intentional distribution of heroin (a felony under § 841(a)(1)). Abrams, the Government witness to this call, testified that Watson called him to suggest that Watson had kilograms of heroin to sell. Watson on the other hand, denied that he had made such a telephone call. Rather, he testified, around that date Abrams had called him to ask if he, Watson, knew anyone who could supply Abrams, but Watson replied that he did not deal in narcotics. Under Watson's version of the conversation, he did not violate § 843. Since he did not admit the crime charged, he was not entitled to any entrapment instruction as to this count, and he cannot complain that the entrapment charge was erroneous as to this count. United States v. Hendricks, 456 F.2d 167 (9th Cir. 1972).

■ As to the other counts on which Watson was convicted, he admitted that he had committed the acts alleged. We therefore must determine whether he was entitled to an entrapment charge as to those counts. In making this determination we must resolve all conflicts in testimony in favor of the defendant, United States v. Sawyer, 210 F.2d 169 (3d Cir. 1954), no matter how improbable we may find the defense version of the facts.

## II. The Testimony

■ Watson testified as follows. On December 28, 1971, he ran into an old friend, Emmett, whom he had not seen since 1967 or 1968. Emmett was accompanied by Abrams, who, unknown to Watson, was a special agent with the Bureau of Narcotics and Dangerous

Drugs. Emmett, introducing Abrams to Watson as his partner in the bartending business, talked Watson into stopping and having a drink. While Watson and Emmett were talking, Abrams interrupted and told Watson that Abrams and Emmett would appreciate his help in their attempt to buy narcotics. Watson, who had not discussed narcotics with Emmett up to this point, refused, saying that he only bought a few bags at a time for his own use.[3]

Within a week, Abrams called Watson and asked him whether he had tried to obtain drugs. Watson replied:

I told you from the beginning I don't deal in any nob or know nothing about buying or setting up anybody. I buy for myself, and that's it. . . . I worked in the bar business, but I don't do no dealing in narcotics.

Abrams called again a few days later and asked if he could come to Watson's home to talk. Watson, saying he had "nothing to hide," left it up to Abrams. Abrams came, saying that he had lost his connection in New York and was looking for an introduction to someone who would sell him a kilo or two of heroin. He also bragged about his other connections and the size of his network. Watson said that he didn't know anyone who could supply the quantity Abrams wanted to buy. As Abrams left, he told Watson that he would "make it worth your while" if Watson would connect him with a dealer. When Abrams called a week later, presumably from Ohio, Watson told him, " . . . I keep telling you over and over this isn't my thing." Abrams was not put off, saying that when he was back in town he might stop off to see Watson.

When Abrams did stop off, Watson decided he would try to "burn" Abrams by telling him he, Watson, could get the drugs, taking his money, and then not

<hr/>

3. Watson admitted that he had been using narcotics for two years prior to the meeting. The fact that he was a user, however, does not establish that he was also a predisposed seller unable to claim entrapment. United States v. Ewbank, 483 F.2d 1149, 1151 (9th Cir. 1973).

making delivery. With no intent of supplying drugs, he told Abrams that he could supply a kilo if Abrams would pay cash in advance. The "burn" scheme failed, however, when Abrams refused to turn over any money without first seeing the drugs. This meeting between Abrams and Watson was in late January or early February.

Watson at that point arranged with his wife and daughter that when Abrams called, Abrams was to be told that Watson was not home. Watson testified that he did this because "after I found out that he wasn't going to let me take his money, I had no more use to deal with him." He was still primarily concerned with obtaining drugs for his own use and "did not want to have anything to do with setting up sales of narcotics."

Abrams called "quite a few times" in the next two months, but was told that Watson was not home.[4] Abrams became known as "Creep" in the Watson household. One time when his daughter told him that Abrams had called and had been told that Watson was not home, Watson had responded,

> Good. What does he want? Why doesn't he leave me alone? Can't he see it's two months? Can't he see I don't want to be bothered?

According to the Watsons, the phone calls kept coming, however. In March, in the course of his small purchases, Watson met "Herb", who mentioned that he was a big dealer. The next time Abrams called, Watson still refused to talk to him. However, a short time later, in Watson's own words,

> I was sitting around. Money was no good. No narco, and I got quite a few refusals from my wife for any more advancements of money, so I felt, within myself I said, "Well if he calls, I'll try to hook him and Herb."

The next time Abrams called, Watson told him that he, Watson, could connect Abrams with a supplier. Abrams agreed, and suggested that Watson represent him in price negotiations. Watson initially refused, but agreed after Herb refused to meet directly with Abrams. The sale was arranged and took place at Watson's house a few days later on March 22. At Abrams' urging, Watson arranged another telephone contact between Abrams and Herb. On March 31, while Abrams was in Watson's home, Watson called Herb and gave the phone to Abrams, who spent several minutes negotiating a purchase. The sale never occurred however, and thereafter Watson refused to do anything more for Abrams despite Abrams' statement that "you could make yourself some big money." Watson was arrested shortly thereafter.

■ Watson stuck to his story on cross-examination. He admitted that he had been convicted in 1971 for the use and possession of narcotics, and had been arrested for the same offense in 1972. He had been convicted of selling narcotics in 1955, but he denied on the stand that he had actually committed the offense.[5]

### III. Sufficiency of the Evidence to Raise the Defense

■ In United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the Supreme Court recently reconsidered the basis of the entrapment defense and reaffirmed the majority opinions of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The Court restated that

> [T]he entrapment defense prohibits law enforcement officers from instigating criminal acts by persons "oth-

---

4. Watson's wife testified that Abrams had called once or twice every week, usually when Watson was home, but Watson would not talk to him.

5. We do not find the 17 year old sales conviction to be of significant probative value in

showing a present predisposition to sell. Sherman v. United States, 356 U.S. 369, 375–376, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). *See also* note 3 *supra*.

erwise innocent in order to lure them to its commission and to punish them." . . . Thus, the thrust of the entrapment defense was held to focus on the intent or predisposition of the defendant to commit the crime.

411 U.S. at 428–429, 93 S.Ct. at 1641. As this court has stated in United States v. Catanzaro, 407 F.2d 998, 1001 (3d Cir. 1969),

> The basic question in an alleged entrapment case is whether the accused was ready and willing to commit the crime if an opportunity should be presented, or whether a person not otherwise disposed to wrongdoing was corrupted by some overreaching or special inducement, often amounting to reprehensible conduct.

■ We of course are not confronted with the question of whether Watson was entrapped as a matter of law, but rather with the question of whether he presented enough evidence of entrapment to be entitled to have the jury consider the defense. While this Circuit has not articulated a test to determine when a defendant becomes entitled to an entrapment charge, the Second Circuit has applied a workable test which we adopt. The charge must be given, however unreasonable the judge would consider a verdict in favor of the defendant to be, when the accused shows (1) evidence that the Government initiated the crime, regardless of the amount of pressure applied to the defendant, and (2) any evidence negating the defendant's propensity to commit the crime. United

States v. Riley, 363 F.2d 955, 958–959 (2d Cir. 1966). See also United States v. Cohen, 431 F.2d 830, 832 (2d Cir. 1970).

■ It is clear that, at least absent Watson's admission that he arranged the March 21 sale because he needed money, Watson would have been entitled to the entrapment charge on all the counts involving March events. Abrams mentioned narcotics dealings to Watson before Watson had discussed the subject, and Abrams persisted in taking the initiative over three months in calling and meeting Watson. Watson's considerable resistance over that period, and his rejection of each opportunity to sell to Abrams for three months, entitled Watson to have the jury consider under proper instructions whether he was entrapped.[6]

The Government urges, however, that Watson's admitted monetary motive for eventually agreeing to connect Abrams with a supplier establishes a predisposition to commit the crime and an absence of entrapment as a matter of law. We reject this contention. We believe that Watson's statement of his reason for succumbing should be weighed by a jury in the light of the evidence of considerable and persistent importunities by Abrams. The jury would be justified in finding, assuming it believed Watson's entire story, that Watson would not have agreed to arrange the sale, despite his need for money, were it not for Abrams' persistent solicitations.[7]

---

6. To convict on Count III of the indictment, the jury must have believed Abrams' testimony that on January 5, Watson had called Abrams, began discussing kilograms of heroin, and suggested that Abrams meet Watson at the latter's home. Even accepting this testimony, however, we believe that Watson was entitled to an entrapment charge.

In United States v. Klosterman, 248 F.2d 191 (3d Cir. 1957), this court reversed the bribery conviction of an IRS agent, Deeney, on the ground that he had been entrapped as a matter of law by his superior, King. Even though Deeney had made the initial approach to King in regard to a taxpayer who had offered a bribe, Deeney thereafter did nothing to set up a meeting with the taxpayer's agent despite King's ten or eleven inquiries as to whether Deeney had done so. This court found as a matter of law that even if Deeney's initial approach to King were a criminal act, Deeney's abandonment of the scheme was sincere, and the criminal intent for Deeney's ultimate participation originated with King.

7. In United States v. Klosterman, *supra*, this court found entrapment as a matter of law even though no motive was given for the ac-

## IV. The Correctness of the Charge

The trial court in this case, after giving the standard entrapment charge we approved of in *Cruz*, instructed the jury with the bifurcated charge which originated with Judge Learned Hand. As stated by Judge Hand,

> Therefore in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it.

United States v. Sherman, 200 F.2d 880, 882–883 (2d Cir. 1952).

The Second Circuit has recently held that the giving of this charge did not constitute reversible error, although the court suggested that in the future

> [I]t will be enough to tell the jury that if it finds *some evidence* of government initiation of the illegal conduct, the Government has to prove beyond a reasonable doubt that the defendant was ready and willing to commit the crime. [Emphasis supplied.]

United States v. Braver, 450 F.2d 799, 805 (2d Cir. 1971).

Other circuits have also rejected the bifurcated charge. In Notaro v. United States, 363 F.2d 169, 174–175 & n. 6 (9th Cir. 1966), the court stated that

the defendant's burden of raising the entrapment issue was met by a showing that the commission of offense was attended by the intervention of a government agent, and that thereupon the burden was on the prosecution to disprove entrapment beyond a reasonable doubt. The court was to decide whether the issue was raised, and the only question going to the jury was the ultimate defense as a whole.[8]

This court has never had to directly face the question of whether the giving of the bifurcated charge constitutes error. However, we have indicated our preference for a unitary charge. In United States v. Silver, 457 F.2d 1217 (3d Cir. 1972), we called it a "settled principle" that "when the defense of entrapment is properly raised the burden of proof is on the Government to prove beyond a reasonable doubt that the defendant was not entrapped." 457 F.2d at 1220.[9]

Furthermore, in Government of the Virgin Islands v. Cruz, 478 F.2d 712 (3d Cir. 1973), decided after the district court decision in this case, we approved of an instruction which places the burden on the Government to disprove the whole defense beyond a reasonable doubt. 478 F.2d at 717 n. 5. We stated:

> In Notaro v. United States, 363 F.2d 169 (9th Cir. 1966), . . . the Ninth Circuit held that an instruction almost identical to the one above constituted reversible error because it

cused's participation other than the desire for monetary gain.

See United States v. White, 390 F.2d 405 (6th Cir. 1958), where the court found that a factual question of entrapment existed when the defendants "testified that their initial reluctance to participate was overcome by [the agent's] insistence and by their pressing financial needs. . . ." 390 F.2d at 406. *See also* Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963), where failure to give an entrapment charge was held reversible error when the only possible motive of the defendant given by the court was his hope for a reward from the agent.

8. *See also* United States v. Harrell, 436 F.2d 606, 612 (5th Cir. 1970), cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); United States v. DeVore, 423 F.2d 1069, 1072 (4th Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119 (1971); Kadis v. United States, 373 F.2d 370, 373–374 (1st Cir. 1966); Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127, 129 n.2 (1963).

9. The case cited for this proposition was United States v. Conversano, 412 F.2d 1143, 1149 (3d Cir.), cert. denied, 396 U.S. 905, 90 S.Ct. 219, 24 L.Ed.2d 181 (1969), which had contrasted the quoted doctrine with the doctrine represented by the bifurcated charge. 412 F.2d at 1149 & n.6.

could have created the erroneous impression in some jurors' minds that the accused carried the burden of proof as to the positive elements of an entrapment defense. Moreover, the *Notaro* court said that it must be made clear to the jury that the accused is "entitled to be acquitted if, from the evidence, the jury, because of the entertainment of reasonable doubt, should be unable to 'find' that the necessary elements of the defense had not been excluded." 363 F.2d at 176. This must be made explicit even though the jury is properly informed in a general instruction as to the burden of proof which rests upon the prosecution.

Although *Notaro* has not been specifically adopted by this Circuit, we would follow it and reverse the district court here if the defendant had timely objected to the court's charge

. . . .

478 F.2d at 717.

■ In this case, there is no contention that the defendant's objection was not timely. We therefore hold that once there is sufficient evidence of Government inducement to commit the crime to entitle the defendant to go to the jury with an entrapment defense, the jury should be given only the instruction we approved in *Cruz*, putting the burden on the Government to negate the defense as a whole.

■ ■ This conclusion is consistent with the Supreme Court's reaffirmation that the focus of the entrapment defense is on the predisposition of the defendant rather than on the nature of the police behavior. United States v. Russell, 411 U.S. 423, 429, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Inducement does not become irrelevant to either party, to be sure, since the stronger the inducement, the more likely that any resulting criminal conduct of the defendant was due to the inducement rather than to the defendant's own predisposition. Under the unitary approach we require, inducement therefore enters as an element of predisposition which the Government must disprove, rather than as an independent element which the defendant must prove.

Pragmatic considerations also inhibit us from approving an entrapment charge involving two elements, with different burdens of proof on different parties for each element. We see no valid justifications for imposing such a confused standard on a jury in a criminal case for a judicially created defense which, as pointed out above, involves essentially a single element. Indeed, we are supported in this view by the Government brief in this case which concedes that "it must fairly be said that the initial treatment in the charge of the entrapment issue could generate confusion on the part of the jury."[10]

The judgment of the district court will be affirmed as to Count III and reversed as to all other counts on which defendant was convicted. The case will be remanded for a new trial or other proceedings consistent with this opinion.

---

10. Brief for Appellee at 8. The Government's two responses to its concession are (1) "any such confusion was not plain error in light of the circumstances under the existing law", and (2) any confusion was "completely cured by the final portion of the charge" which stated that "there is no burden on the defendant to introduce any evidence or to convince you of any fact which, if true, would be a defense to the crime charged in the indictment." As to the first argument, we can reverse even though we do not find the charge to be plain error, since proper objection was made. *Compare Cruz, supra,* at 717 of 478 F.2d. As to the contention that the error was cured by the rest of the charge, we rejected the identical contention in *Cruz, supra,* at 717, and in *Silver, supra,* at 1219 of 457 F.2d.