MEMORANDUM AND ORDER
 

 BECHTLE, District Judge.
 

 The defendants Leroy Miah (“Miah”) and John McLean (“McLean”) were each convicted, by a jury before this Court on February 7,1977, of violating 21 U.S.C. § 841(a) (distribution of a controlled substance), 18 U.S.C. § 2 (aiding and abetting), and 21 U.S.C. § 846 (conspiracy). The three-count indictment under which the defendants were convicted charged that Miah and McLean sold a quantity of heroin to a Government agent on June 15, 1976.
 

 Presently before the Court are Miah’s motions for a new trial and in arrest of judgment, pursuant to Fed.R.Crim.P. 33 and 34, respectively, and McLean’s motions for a judgment of acquittal, for a new trial and in arrest of judgment, pursuant to Fed. R.Crim.P. 29, 33 and 34, respectively.
 
 [1]
 

 A brief summary of the evidence will be helpful to an understanding of this opinion. In early June of 1976, William West (“West”), a Government informant, was telephoned by Miah, who told West that he had a quantity of heroin for sale. On June 7, 1976, West, Walter Samuels (“Samuels”) and Alvin Williams (“Williams”), both Philadelphia police officers assigned to the Drug Enforcement Administration Task Force (“DEA”), drove to Miah’s home at 917 West Third Street, Chester, Pennsylvania. Samuels and West entered Miah’s home where West introduced Samuels to Miah. Miah, distrusting the stranger Samuels, took West into a side room, made a telephone call, and was heard to say that the “package” would arrive shortly. Approximately 45 minutes later, a man, referred to as “Sweeney,” and identified at trial as McLean, arrived at Miah’s home carrying a brown paper bag which concealed a coffee can containing heroin. Samuels, through West, and Miah negotiated a sale of one ounce of heroin for $1,800. West delivered a briefcase containing $1,800 to Miah, which McLean assisted Miah in counting.
 

 Two days later, on June 9, 1976, West, Samuels and Williams returned to Miah’s home, and West and Samuels entered the residence. After a short conversation between Miah and Samuels, West was instructed to leave the premises. Shortly after West left, McLean entered, and Miah introduced McLean to Samuels as “Sweeney.” Miah and Samuels then discussed, in McLean’s presence, a second sale of heroin by Miah to Samuels. Miah whispered to McLean and then informed Samuels that there would be no drug sales that day. After leaving with Miah a New Jersey telephone number where he could be contacted, Samuels exited the residence.
 

 On June 15, 1976, the date of the violations charged in the indictment, Samuels and Williams returned to Miah’s home and Samuels again entered. Miah and Samuels agreed to buy from Miah a half-ounce of heroin plus “cutting” materials for $1,100. Miah then made a telephone call. Approximately 15 minutes later, McLean entered
 
 *263
 
 carrying a brown paper bag which contained heroin and various cutting materials. Samuels placed a briefcase containing the $1,100 on a table. Miah picked up the brown paper bag containing the heroin and cutting materials and handed it to McLean, who exited the house. Samuels and Miah then left the house together, entered Miah’s car, and motioned for Williams to follow. Miah and Samuels then drove a short distance, stopped, and Samuels exited Miah’s car and entered Williams’• car. At Front and Pennell Streets, Samuels exited Williams’ car and joined Miah, who was standing outside his vehicle with McLean. While Samuels and Miah waited, McLean left and drove to Lloyd Street, where he placed the brown paper bag near the sewer. When he returned, McLean said to Samuels, “The package is down there” and pointed toward Lloyd Street. As McLean drove off, Samuels rejoined Williams, and the two officers followed Miah in his car to Front and Lloyd Streets. At that intersection, Miah pointed out the window of his car and said, “There’s your package over there.” Williams and Samuels retrieved the package and waved to Miah, who drove away.
 

 At the trial, Miah relied upon the defense of entrapment. He testified that he had knowingly possessed heroin and distributed heroin to West and Samuels on June 7 and 15, 1976. However, he testified that he did so only because West had contacted him and told him that he (West) owed the “Black Mafia” money and that they had threatened to kill his child if he did not repay the money owed. Miah testified that he had agreed to lend West money with which to purchase drugs in order to help West repay the money owed. Miah also testified that he had never been involved with drugs prior to June 6, 1976, or after June 15,1976, and that but for West’s story he, Miah, would never have become involved with drugs.
 

 Samuels testified on rebuttal that, subsequent to June 15, 1976, he had met with Miah on July 14 and July 20, 1976, and had spoken with Miah over the telephone on July 20, July 21, July 31 and August 3,1976, for the purpose of arranging subsequent purchases of heroin. In testifying about his conversations with Miah on the above dates, Samuels referred to Miah’s statements, which contained references to “New York connections,” “12 cut,” and “his (Miah’s) boy Sply, who just got out of jail for homocide (sic) had a connection.” Before the Court permitted Samuels to testify to these conversations with Miah, it instructed the jury that Samuels’ testimony related to dates not charged in the indictment and, therefore, not part of the alleged conspiracy, and that Samuels’ testimony was admissible only against Miah and not against McLean. These instructions were repeated to the jury by the Court before the jury retired for deliberations.
 

 Both Miah and McLean filed motions in arrest of judgment pursuant to Fed.R.Crim.P. 34
 
 [2]
 
 which argue that the indictment does not properly charge the offense of conspiracy. We find that the indictment is sufficient as a matter of law to charge the offense of conspiracy under 21 U.S.C. § 846. First, the caption of the indictment states both the citation of each of the statutes which the defendants were charged with having violated, as well as a parenthetical description of the offenses. Second, Count III of the indictment, in which the crime of conspiracy is charged, lists the date of the offense, tracks the language of the statute under which the violation is alleged, 21 U.S.C. § 846, and cites the specific statutes which the defendants were charged with having conspired to
 
 *264
 
 violate. Finally, the indictment lists numerous, detailed overt acts alleged to have been committed in furtherance of the conspiracy. These overt acts are of sufficient detail to advise Miah and McLean of the offense with which they are charged. These factors, taken together, are sufficient as a matter of law to charge Miah and McLean with the offense of conspiracy.
 
 See United States v. Bermudez,
 
 526 F.2d 89, 94 (2d Cir. 1975),
 
 cert. denied,
 
 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). Miah and McLean’s motions in arrest of judgment will, therefore, be denied.
 

 Next, McLean renews his motion for a judgment of acquittal raised at the close of the Government’s case and at the close of all the evidence, pursuant to Fed.R. Crim.P. 29. In support of his motion,
 
 [3]
 
 McLean argues that the evidence produced by the Government was insufficient to sustain a conviction as a matter of law. In particular, he argues that there was no direct evidence that McLean knowingly and intentionally distributed heroin, or that he conspired with Miah to distribute heroin. We find McLean’s arguments unpersuasive.
 

 In reviewing the denial of a motion for judgment of acquittal, the crucial issue is whether the evidence, when viewed in a light most favorable to the Government,
 
 Glasser v. United States,
 
 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942);
 
 Government of Virgin Islands v. Cruz,
 
 478 F.2d 712, 716 (3d Cir. 1972) (citations omitted), was such that a jury could have found beyond a reasonable doubt that the defendant was guilty as charged.
 
 United States v. De Garces,
 
 518 F.2d 1156, 1159-1160 (2d Cir. 1970);
 
 United States
 
 v.
 
 Phifer,
 
 400 F.Supp. 719, 724 (E.D.Pa. 1974),
 
 aff’d mem.,
 
 532 F.2d 748 (3d Cir. 1976). Where a conviction is based on circumstantial evidence, the evidence need not be inconsistent with every conclusion but that of guilt, provided that such circumstantial evidence provides the jury with a basis upon which to find the defendant guilty beyond a reasonable doubt.
 
 United States v. Giuliano,
 
 263 F.2d 582 (3d Cir. 1959);
 
 United States v. Phifer, supra,
 
 400 F.Supp. at 724.
 
 See also United States v. Watkins,
 
 171 U.S.App.D.C. 158, 519 F.2d 294, 297-298 (1975). In reviewing testimony for determining the Rule 29 motion, questions of the weight of the evidence or of thé credibility of the witness are foreclosed by the jury’s verdict.
 
 United States v. Goichman,
 
 407 F.Supp. 980, 991 (E.D.Pa. 1976).
 

 Sufficient evidence to sustain a conviction under 21 U.S.C. § 841(a) requires proof that the defendant knowingly possessed a controlled substance.
 
 United States v. Davis,
 
 461 F.2d 1026, 1035 (3d Cir. 1972). Proof of possession may be shown in a variety of ways, as the court in
 
 Davis
 
 stated:
 

 “Possession” of a narcotic drug under the statutes involved is sufficient to allow conviction unless the one charged with possession explains it to the jury’s satisfaction. Proof of actual possession need not be shown; it may be established by circumstantial evidence. . . . The evidence must be such, however, that a jury may infer that the person charged with possession had dominion and control of the narcotic drug, ... or that he knowingly had power to exercise dominion and control over the drug. . Such dominion and control need not be exclusive but may be shared with others. . On the other hand mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or the property, is insufficient to support a finding of possession.
 

 Id.
 
 at 1035-1036 (citations and footnotes omitted).
 

 
 *265
 
 Applying the above standards to the facts of this case, we find that there was sufficient circumstantial evidence presented by the Government at trial from which a jury might infer that McLean knowingly had dominion and control over the drugs, that he knowingly and intentionally possessed narcotics with the intent to distribute, that he knowingly distributed a narcotic substance, and that he conspired with Miah to bring about this result.
 

 As the summarized evidence above clearly shows, McLean twice carried heroin to Miah’s home in a brown paper bag, apparently in response to a telephone call from Miah. There was evidence that he helped count the $1,800 paid by Samuels for the ounce of heroin on June 7, and that he was present when subsequent drug transactions were discussed by Miah and Samuels on June 9,1976. Further, the covert operation of June 15,1976, in which McLean played a principal role, leaves little doubt that McLean knowingly had power and control over the drug. McLean’s motion for a judgment of acquittal will, therefore, be denied.
 

 We turn finally to Miah’s and McLean’s motions for a new trial pursuant to Fed.R.Crim.P. 33.
 
 [4]
 
 First, Miah and McLean argue that the Court erred in permitting testimony relating to transactions and conversations which occurred on dates other than those alleged in the indictment, on the ground that the prejudicial impact of such testimony outweighed its probative value. We hold that all such testimony was properly admitted at trial, that its probative value outweighed its prejudicial impact, and that the jury was given proper cautionary instructions with respect to the admissibility of such evidence against McLean.
 

 With respect to testimony relating to conversations between Miah and Government agents on June 7 and 9, 1976, it is well settled that testimony relating to prior offenses is admissible to show,
 
 inter alia,
 
 identity, motive and common plan or scheme.
 
 Michelson v. United States,
 
 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948);
 
 United States v. Frumento,
 
 426 F.Supp. 797, 803-805 (E.D.Pa. 1976);
 
 United States v. Williams,
 
 367 F.Supp. 768, 770-771 (E.D.Pa. 1973) ,
 
 aff’d mem.,
 
 500 F.2d 1401 (3d Cir. 1974) ; Fed.R.Evid. 404(b). In this case, evidence of transactions which occurred prior to June 15, 1976, were clearly probative of and relevant to the issues of identity, knowledge, intent, motive and common scheme or plan. Furthermore, evidence of other crimes is also admissible where relevant to other issues in the case. Miah’s sole defense at trial was entrapment. Therefore, his propensity to commit the crime was a relevant issue.
 
 United States v. Russell,
 
 411 U.S. 423, 429, 433, 93 S.Ct. 1637, 3 L.Ed.2d 366 (1973). Evidence of prior crimes is relevant on the issue of a defendant’s propensity to commit a crime and is, therefore, admissible.
 
 Sorrells v. United States,
 
 287 U.S. 435, 451, 53 S.Ct. 19, 77 L.Ed. 511 (1932);
 
 United States v. Silver,
 
 457 F.2d 1217, 1219-1220 (3d Cir. 1972).
 

 Testimony relating to conversations and transactions occurring subsequent to June 15,1976, was also properly admitted. Miah took the stand in his own defense and testified that he was entrapped by Samuels and West, that he would never have become involved in any of these drug transactions but for this entrapment, and that he had not been involved in narcotics negotiations after June 15, 1976. The Government then produced testimony that, on several dates subsequent to the date alleged in the indictment, Miah and Samuels had engaged in conversations respecting prospective heroin transactions. This testimony was relevant to the issue of Miah’s credibility and was admissible on rebuttal for impeachment purposes. Miah opened the door to such testimony by his testimony on direct examination and the Government was entitled to
 
 *266
 
 contradict that testimony.
 
 Harris v. New York,
 
 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1970);
 
 United States v. Holland,
 
 360 F.Supp. 908, 913-914 (E.D.Pa. 1973),
 
 aff’d mem.,
 
 487 F.2d 1395 (3d Cir. 1973),
 
 cert. denied,
 
 416 U.S. 971, 94 S.Ct. 1994, 40 L.Ed.2d 559 (1974); Fed.R.Evid. 607, 611.
 

 Finally, before the Government was permitted to introduce such testimony, the Court instructed the jury that such testimony was not part of the conspiracy alleged in the indictment and, therefore, not admissible against McLean. (N.T. 4-121.) This admonition was repeated in the Court’s final charge to the jury.
 

 Miah next argues that the Court erred when it instructed the jury that, “Good motive alone is not a defense where the act done or committed is a crime,” on the ground that this charge undermined Miah’s entrapment defense.
 

 In his defense at trial, Miah testified that West had originally contacted him about obtaining and distributing narcotics, that but for West’s story about the “Black Mafia” threatening his life he never would have become involved with narcotics, and that he had no contact with narcotics prior to June 7, 1976, nor subsequent to June 15, 1976. Miah’s testimony thus put before the jury the issue of whether Miah was entrapped by the Government.
 
 United States v. Armocida,
 
 515 F.2d 49, 55 (3d Cir. 1975),
 
 cert. denied,
 
 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975);
 
 United States v. Watson,
 
 489 F.2d 504, 509 (E.D.Pa. 1973). At the close of all the evidence, and after arguments by counsel, the Court instructed the jury on,
 
 inter alia,
 
 the defense of entrapment.
 
 [5]
 

 The instructions by the Court to the jury were proper and in complete accord with jury instructions approved by both the Supreme Court and the Third Circuit.
 
 See United States v. Russell, supra,
 
 411 U.S. at 427, 93 S.Ct. 1637;
 
 United States v. Watson, supra,
 
 489 F.2d at 506;
 
 Government of the Virgin Islands v. Cruz, supra,
 
 478 F.2d at 717 n. 5;
 
 United States v. Silver, supra,
 
 457 F.2d at 1219-1220.
 
 See also
 
 Devitt and Blackmar,
 
 Federal Jury Practice and Instructions,
 
 §§ 13.09,14.11 (3d Ed. 1977). As the instructions given reflect, the issues presented to the jury by an entrapment defense are the criminal design and predisposition of the defendant to commit a crime. In other words, the issue is not the motive behind the defendant’s actions but whether or not the intent to commit the crime originated with the Government agents or with the defendant. If a defendant were predisposed to commit a crime, that is, ready and willing to commit a crime given an opportunity, and did commit a crime while acting with the requisite intent, that is, volitionally and with knowledge that his conduct was unlawful, then the reason for, or motivation behind, the commission of the crime is irrelevant to a determination of his guilt or innocence. We hold, therefore, that Miah’s argument with respect to the Court’s instructions is without merit. The motions for a new trial will, therefore, be denied.
 

 An appropriate Order will be entered.
 

 [1]
 

 . Both Miah and McLean filed several “boilerplate” motions with the Court prior to their receipt of the trial transcripts. Each such motion raised numerous grounds, often improperly, in its support. Upon receipt of the trial transcripts, Miah and McLean each then filed a memorandum of law in support of the previously filed motions. These memoranda addressed only a few of the grounds previously raised by their motions, and discussed other grounds not raised by motion. To avoid confusion in dealing with the many issues raised, we will primarily address those issues discussed in the memoranda. The various “boilerplate” issues, while considered, will be addressed only where such issues are deemed nonfrivolous.
 

 [2]
 

 . The Court notes that the grounds asserted by Miah and McLean in support of their respective motions are substantially identical. Neither Miah nor McLean addressed any of these grounds in their memoranda of law. Furthermore, of the many grounds raised in support of the motion, only one ground, that the indictment does not properly charge the offense of conspiracy, is properly raised in a Rule 34 motion.
 
 See United States v. Hudson,
 
 422 F.Supp. 395, 396 n.1 (E.D.Pa.1976),
 
 aff’d mem.,
 
 556 F.2d 569 (3d Cir. 1977);
 
 United States v. Beasley,
 
 412 F.Supp. 447, 449 n.1 (E.D.Pa.1975),
 
 aff’d mem.,
 
 538 F.2d 321 (3d Cir. 1976); Fed.R. Crim.P. 34.
 

 [3]
 

 . McLean raises several grounds in support of his Rule 29 motion, each of which is, in essence, an argument that the evidence at trial was insufficient to support a conviction as a matter of law. This argument is the only ground properly raised by a Rule 29 motion for a judgment of acquittal.
 
 See United States v. Rivers,
 
 406 F.Supp. 709, 711 n.1 (E.D.Pa. 1975),
 
 aff’d mem.,
 
 544 F.2d 513 (3d Cir. 1976).
 

 [4]
 

 . As we noted in footnote 1,
 
 supra,
 
 both Miah and McLean filed “boilerplate” motions for a new trial, pursuant to Fed.R.Crim.P. 33, raising numerous grounds in support thereof. The memoranda of law subsequently filed by Miah and McLean addressed only a few of these issues and discussed other issues not previously raised by motion. We will discuss only those issues deemed to be nonfrivolous.
 

 [5]
 

 . The Court instructed the jury that:
 

 Where a person had no previous intent or purpose to violate the law but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment and the law as a matter of policy forbids his conviction in such a case. That is, a complete defense to all the charges in this indictment against Mr. Miah in the defense of entrapment.
 

 The Government has the burden of proving beyond a reasonable doubt that the defendant was not, entrapped into committing the acts with which he is charged. If you have a reasonable doubt as to whether the defendant was entrapped, you must acquit the defendant, Miah.
 

 Where a person, however, already has a readiness and a willingness to break the law, the mere fact that the Government agents provided what appears to be a favorable opportunity is not entrapment. . . . [N.T. 5-49 to 5-50.]
 

 The Court then defined the terms “knowingly,” “willfully” and “unlawfully” [N.T. 5-50] and instructed the jury that Miah and McLean were charged with specific intent crimes. The Court then said:
 

 Now “intent” and “motive” should never be confused. . . . Motive is what prompts a person to act or fail to act. Good motive alone is not a defense where the act done or committed is a crime. [N.T. 5-52.]