**UNITED STATES of America**

v.

**Myron LEVIN.**

**Appeal of Myron "Pep" LEVIN.**

**No. 78–1306.**

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1979.

Decided Sept. 26, 1979.

Jeffrey M. Miller (argued), Nasuti & Miller, Philadelphia, Pa., for appellant.

Ralph A. Jacobs (argued), Robert J. Del Tufo, U. S. Attys., for appellee; Samuel A. Alito, Jr., Asst. U. S. Atty., Newark, N. J., on brief.

Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

Following a jury trial, appellant Myron Levin and a co-defendant, Tom Cokos,[1] were convicted on three counts of knowingly possessing, using, or transferring without authorization United States Department of Agriculture Food Coupons in violation of 7 U.S.C. § 2023(b) (1976) (current version at 7 U.S.C. § 2024(b) (Supp. I 1977)), and on one count of conspiring to violate section 2023(b). The trial testimony established that Levin and Cokos were not authorized to possess, use, or transfer food coupons; that they in fact possessed a large quantity of coupons; and that they agreed to sell and did sell coupons to Monta Artwell, a government informant. Levin's primary defense at trial was that he lacked the *mens*

---

1. Cokos did not appeal from his conviction.

*rea* necessary to commit the charged offenses.

Levin poses three issues on this appeal. First, he argues that the district court erred in refusing to include in its general jury charge Levin's proposed instruction that was "in the nature of an entrapment request." [2] Second, Levin claims that the trial court, upon receiving a note from the jury inquiring about the relevance of entrapment, erred in refusing to charge the jury on that subject. Third, he asserts that the district court's response to the jury's note—that entrapment was not an issue—was also erroneous. We are not persuaded by Levin's contentions, and affirm the judgment of conviction.

■ It is the rule of this Court that a defendant is not entitled to an instruction on the defense of entrapment unless he admits that there were present the elements of the crime with which he is charged. *United States v. Watson*, 489 F.2d 504, 507 (3d Cir. 1973). Levin argues here that, although he defended on the ground that he did not have sufficient *mens rea* to commit the charged offenses, he in fact proffered an entrapment defense. He contends that he lacked the necessary *mens rea* because he was induced by Artwell to possess and sell food coupons when he was not predisposed to do so, and thus in effect admitted that the elements of the crimes charged were present. Although we have serious doubt whether Levin's defense can reasonably be interpreted in the manner he suggests, we have no occasion to decide this question because we hold that his appeal fails for a factual reason.

■ Levin predicates his argument that he actually presented an entrapment defense on his counsel's allusion—during the opening and closing statements [3] and during his cross-examination of Artwell [4]—to Art-

2. Brief for Appellant at 12a, 32.

3. Levin's counsel stated in his opening remarks:

> The evidence will prove beyond any question that Myron Levin and Tom Cokos had food stamps. The defendants will agree with that. There's no question about that; that they had a substantial amount of food stamps. The evidence of the Government will also show they had no criminal intent. In fact, you will find from the evidence as well, the defendants on the tapes which were made secretly, not to Mr. Levin's knowledge or not to Mr. Cokos' knowledge, that there were discussions about the stamps being cleaned. There were discussions by Mr. Levin on the tapes showing his total ignorance in connection with what they were, what you do with them and how you get rid of them. The defense in this case will prove to you that there was a total lack of criminal intent on the part of the defendants. They had them. They knew nothing about them until Monta Artwell came along. They did nothing with them at all until Artwell came along.
>
> \* \* \* \* \* \*
>
> We will also prove to you that Monta Artwell orchestrated this entire theme or orchestrated the entire maneuvers by Levin and he got the food stamps circulated around in an effort to cleanse himself from prosecution and if these men are convicted, it worked.

App. 26a–27a, 35a.

In his closing remarks, Levin's counsel stated:

> Secondly, in discussing this case, the real issue boils down to, when pushing everything else aside, the issue is really whether during this relationship between August 25 and September 16, I think with Artwell and Levin, during that relationship in connection with these food stamps, did Levin manifest a criminal intent, intention to violate the law or was he induced and pushed and encouraged into getting involved in a Black Market transaction with Monta Artwell because of the trickery and deceit of Artwell. That's really the issue.

App. 63a.

4. On cross-examination of Artwell, Levin's counsel elicited the following testimony:

> Q. You don't know whether Mr. Levin knew where he could go with food stamps or not?
> A. No.
> Q. Up to this conversation did Mr. Levin ever indicate to you that he knew where he could so to speak unload these food stamps?
> A. No.
>
> \* \* \* \* \* \*
>
> Q. After Levin suggests that maybe we can just go out and buy food, isn't it you that tells him about a store where you can unload these food stamps?
> A. Yes.
> Q. Up to that point Pepe Levin never mentioned to you at any time about anyplace where he could unload, is that correct, up to that point?

well's influence on Levin's behavior. Levin's counsel conceded at oral argument, however, that he did not explicitly raise the defense of entrapment at any point during the trial. The government would have us infer from this that Levin sought to put the issue of entrapment before the jury while also striving to circumvent the rule that would have permitted the government to prove Levin's predisposition to commit the offense in question by introducing evidence that he had previously committed other crimes. . See *United States v. Busic*, 587 F.2d 577, 585 (3d Cir.), *cert. dismissed*, 435 U.S. 964, 98 S.Ct. 1631, 56 L.Ed.2d 72 (1978) (evidence of prior convictions admissible under Fed.R.Evid. 404(b) to prove predisposition).

The government has illustrated the danger inherent in permitting a defendant to raise the possibility of entrapment in the minds of the jurors, and at the close of testimony to request an entrapment instruction, without requiring him to put the question at issue. If such a procedure were sanctioned, the defendant could effectively benefit from the entrapment defense without providing the prosecution with adequate notice for it to meet its burden of proving beyond a reasonable doubt that the defendant was not entrapped. *See United States v. Watson*, 489 F.2d 504, 510–11 (3d Cir. 1973). Several years ago, the Court of Appeals for the District of Columbia Circuit addressed this same problem:

> Since a plea of entrapment admits commission of the act charged, we question whether the defense of entrapment can ever be raised except *in terms* by the accused. We have been cited to no case and have found none which holds that the defense can be held to have been raised by inference, implication or estoppel based on ambiguous actions of defense counsel. Obviously, however, it would be

unfair if defense counsel could both put the issue of entrapment before the jury through his questioning and still keep the Government from presenting evidence of predisposition by declining formally to plead entrapment as a defense and by declining to request an entrapment instruction at the conclusion of the trial. Consequently, when defense counsel asks questions thought to be suggestive of entrapment, he should be instructed to plead the defense or abandon the line of questioning.

*United States v. Neuman*, 141 U.S.App.D.C. 131, 132–33, 436 F.2d 285, 286–87 (D.C.Cir. 1970) (per curiam) (emphasis in original; citations omitted), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971).

■ We conclude that it would impair the effectiveness of the adversarial process to permit a criminal defendant to allude to a theory of entrapment, and thus to plant the defense in the jurors' minds, without putting the government on notice so that it can meet its burden of proving that the defendant was not entrapped. Therefore, we hold that a defendant is not entitled to an instruction on entrapment unless he explicitly pleads, at a sufficiently early point in the trial, that he was entrapped.

■ We emphasize that our decision today does not shift to the defendant either the burden of production or the burden of proof. The defendant is required to raise the issue of entrapment by pleading it; but the burden of going forward with evidence and of proving beyond a reasonable doubt the that defendant was not entrapped remains with the prosecution. Nor does today's decision alter the rule that before a defendant is entitled to an entrapment instruction he must admit that the elements of the offense charged were present. Thus,

A. No.

Q. When you say no, am I right or am I wrong?

A. You're right.

\* \* \* \* \* \*

Q. So that in fact during that discussion when you and I spoke on the phone, you did tell me, did you not—

A. Yes, I did.

Q. Pepe Levin wasn't guilty and you set him up, put him up to it, isn't that correct?

A. I told you that, yes.

App. 58a–59a, 74a.

on neither point do we deviate from our decision in *United States v. Watson*, 489 F.2d 504, 507, 510–11 (3d Cir. 1973).

For the reasons set forth in this opinion, and because Levin did not plead or in any way explicitly assert the defense of entrapment, the judgment of conviction will be affirmed.