## UNITED STATES of America

v.

**Joseph McMONAGLE, Jr. aka Joe Mick, James Manning aka Juicer, Walter Helm.**

**Crim. No. 77–202.**

United States District Court, E. D. Pennsylvania.

Sept. 28, 1977.

Joel M. Friedman, Atty.-in-Charge, Robert E. Madden, Sp. Atty., Strike Force on Organized Crime, U. S. Dept. of Justice, Philadelphia, Pa., for plaintiff.

Nicholas A. Clemente, Philadelphia, Pa., for Joseph McMonagle.

Edward Reif, Philadelphia, Pa., for James Manning.

Louis Lipschitz, Philadelphia, Pa., for Walter Helm.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Defendants Joseph McMonagle, Jr. ("McMonagle"), James Manning ("Manning") and Walter Helm ("Helm") were charged in a five-count indictment with violations of 18 U.S.C. §§ 1962(c) and (d), 18 U.S.C. § 495, and 18 U.S.C. § 2. On August 12, 1977, all three defendants were convicted by a jury before this Court of violating 18 U.S.C. § 1962(c).[1] McMonagle was also convicted by the jury of violating 18 U.S.C. § 1962(d).[2] Each of the defendants has filed a motion for judgment of acquittal[3] and for a new trial, pursuant to Rules 29(c)

---

1. 18 U.S.C. § 1962(c) reads, in pertinent part:

   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . collection of unlawful debt.

2. 18 U.S.C. § 1962(d) states as follows:

   (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

3. At the close of the Government's case in chief, the defendants each moved for a judgment of acquittal on each of the five counts of the indictment. Fed.R.Crim.P. 29(a). The motion was granted as to each defendant on Counts III, IV and V, which charged them with having aided and abetted unindicted coconspirator Joseph Braun, Sr., with intent to defraud, to utter and publish forged United States Treasury checks, in violation of 18 U.S.C. § 495 and 18 U.S.C. § 2. The motions were denied with respect to Counts I and II, which charged violations of 18 U.S.C. §§ 1962(c) and (d). At the close of all the evidence, each defendant again moved for a judgment of acquittal with respect to the remaining counts. These motions were denied, and the case was submitted to the jury. Fed.R.Crim.P. 29(a).

and 33 of the Federal Rules of Criminal Procedure, respectively.[4] For the reasons stated below, we will deny all of the motions.

As we recently stated in *United States v. Miah*, 433 F.Supp. 259, 264 (E.D.Pa.1977):

> In reviewing the denial of a motion for judgment of acquittal, the crucial issue is whether the evidence, when viewed in a light most favorable to the Government, was such that a jury could have found beyond a reasonable doubt that the defendant was guilty as charged.

(Citations omitted.)

As applied to this case, the issue is whether, applying the clear language of 18 U.S.C. § 1962(c),[5] the Government produced evidence that McMonagle, Helm and Manning: (1) were employed by *or associated* with *any* enterprise engaged in, or the activities of which affect, interstate commerce, *and*; (2) conducted or participated, directly *or* indirectly, in the conduct of such enterprise's affairs through collection of unlawful debt. The enterprise that the Government charges the defendants in this case with having been associated is a proprietorship with the duly registered fictitious name of Active Check Cashing ("Active").[6] Active is clearly an enterprise within the meaning of 18 U.S.C. § 1962(c). *United States v. Frumento*, 426 F.Supp. 797, 801–808 (E.D.Pa.1976), *aff'd.*, 552 F.2d 534 (3d Cir. 1977); 18 U.S.C. § 1961(4). It is also clear from the evidence presented at trial that the jury could have found that Active was engaged in or that its activities affected interstate commerce. [N.T. 1–22, 2–100, 2–106.] Therefore, the only issue before the Court is whether or not the Government produced sufficient evidence by which a jury could have concluded beyond a reasonable doubt that Helm, Manning and McMonagle were persons employed by or associated with Active and that they participated, directly or indirectly, in the conduct of Active's affairs through collection of unlawful debt.

McMonagle, in his motion for judgment of acquittal, argues that, although the Government produced evidence at trial that he was connected with Active, there was insufficient evidence that he was involved in the collection of unlawful debt. Helm and Manning argue in their respective motions for judgment of acquittal that the Government failed to introduce sufficient evidence that either defendant was employed by or associated with Active or that either conducted or participated in Active's affairs through collection of unlawful debt.

At the trial before a jury in this case, the Government produced the following evidence: Unindicted coconspirator William Graham ("Graham") embezzled several thousand dollars' worth of checks from his employer, Philco Ford, for the purpose of placing wagers on horses and paying off accrued gambling debts. [N.T. 1–35, 1–37, 1–38.] Graham placed his wagers with unindicted coconspirator Joseph Pyfer ("Pyfer"). [N.T. 2–120, 2–121, 2–130.]

Pyfer relayed the day's wagers to his "house." [N.T. 2–112.] From approximately 1967 to 1971, Pyfer's "house" was comprised of McMonagle and his father, Joseph McMonagle, Sr., who owned Active. [N.T. 2–111, 2–112.] In 1971, Joseph McMonagle,

---

4. The Court notes that, of the many grounds raised by the defendants in support of their motions, only those raised in support of their respective motions for judgment of acquittal require discussion.

5. *See* note 1 *supra*.

6. Count I of the indictment, which charges McMonagle, Helm and Manning with having violated 18 U.S.C. § 1962(c), tracks the language of the statute as follows:

> 1. From on or about October of 1971, up to and including the date of the filing of this Indictment, in the Eastern District of Pennsylvania and elsewhere, the defendants, JOSEPH MC MONAGLE, JR., aka Joe Mick, JAMES MANNING, aka Juicer, and WALTER HELM, being persons employed by and associated with an enterprise engaged in and the activities of which affected interstate commerce, to wit: Active Check Cashing, 2734 East Allegheny Avenue, Philadelphia, Pennsylvania, unlawfully, wilfully, and knowingly did conduct and participate directly and indirectly in the conduct of such enterprise's affaris [*sic*] through the collection of unlawful debts.

Sr., retired and turned Active over to his son, defendant McMonagle. [N.T. 2–99, 2–100, 2–114.] At approximately the same time that defendant McMonagle acquired Active, he introduced Helm and Manning to Pyfer as the new "house." [N.T. 2–115 to 2–117.] In 1972, soon after the new "house" took over, Pyfer arranged a meeting at the Willow Grove, Pennsylvania, plant of Philco Ford between Helm, Manning and Graham to discuss Graham's payment of a substantial unpaid balance or "tab" he had accumulated with the "house." [N.T. 2–128 to 2–130.] At the conclusion of that meeting, Helm and Manning told Pyfer that Graham had said he "would have checks." [N.T. 2–128 to 2–130.]

Pyfer's normal routine in handling the embezzled checks was that, when he received the checks from Graham, he would deliver them to McMonagle at Active. [N.T. 2–120, 2–121, 2–130.] Approximately three days after dropping off the checks, Pyfer would return to Active, where McMonagle would pay him the net cash proceeds from the checks. [N.T. 2–121, 2–122, 2–130 to 2–134.] The amount which Pyfer owed on his "tab" with the "house" was deducted from the proceeds of the check and paid directly to Helm and Manning by McMonagle. [N.T. 2–132 to 2–134.] On occasion, Pyfer would deliver Graham's checks to Helm, and a few days later he would receive the net cash proceeds from McMonagle at Active. [N.T. 2–140.] Of the 43 Philco Ford checks embezzled by Graham, 24 were cashed through Active. [N.T. 1–12; Government's Exhibits G–50 through G–74.]

We hold first that the evidence presented at trial was sufficient for a jury to conclude beyond a reasonable doubt that McMonagle, Helm and Manning were associated with Active. The context of the word "associate" in 18 U.S.C. § 1962(c) and the fact that it is not included in the definitional sections of 18 U.S.C. § 1961 indicate that the word must be construed according to its plain meaning. Webster's dictionary defines "associate" as: "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another. . . ."

Webster's Third New International Dictionary (1971 ed.). Construing "associate" in the context of this definition, it is evident that the association need not be a formal one. Cf. United States v. Frumento, supra, 426 F.Supp. at 801–803. Rather, an element of 18 U.S.C. § 1962(c) is satisfied if the evidence shows that the defendants were associated with the enterprise in question by means of an informal or loose relationship. The evidence in this case is sufficient to support a finding of an association between the defendants and Active. We hold further that the evidence presented at trial was sufficient for a jury to conclude beyond a reasonable doubt that McMonagle, Helm and Manning participated in Active's affairs through the collection of unlawful debt. The evidence was clearly sufficient to demonstrate that McMonagle, Helm and Manning conducted or participated in Active's affairs through the collection of debts incurred on horse wagers, in violation of 18 Pa.C.S.A. § 5514 (1973), formerly 18 P.S. § 4607 (1939).

The motions of McMonagle, Helm and Manning for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure will, therefore, be denied.

An appropriate Order will be entered.