UNITED STATES of America, Appellee,

v.

Walter SWIDERSKI and Maritza De Los Santos, Appellants.

Nos. 801, 812, Dockets 75–1422, 75–1423.

United States Court of Appeals,
Second Circuit.

Argued March 11, 1976.

Decided June 11, 1976.

Richard A. Greenberg, New York City (William J. Gallagher, The Legal Aid Society, New York City, of counsel), for appellant Swiderski.

Julius Wasserstein, Brooklyn, N. Y., for appellant De Los Santos.

Ira H. Block, Asst. U. S. Atty., New York City (Thomas J. Cahill, U. S. Atty., and T. Barry Kingham and Harry C. Batchelder, Jr., Asst. U. S. Attys., New York City, of counsel), for appellee.

Before FRIENDLY, MULLIGAN and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal from judgments of conviction entered after a jury trial in the United States District Court for the Southern District of New York, Dudley B. Bonsal, Judge, on an indictment charging both appellants with possession with intent to distribute marijuana and cocaine. Appellant Walter Swiderski (Swiderski) was found guilty of possession of cocaine with intent to distribute and appellant Maritza De Los Santos (De Los Santos) was found guilty of possession of both cocaine and marijuana with intent to distribute.[1] The amount of cocaine involved was the relatively small amount, as these cases go, of one ounce. Both appellants were sentenced to two years of imprisonment, of which all but six months were suspended, plus a three-year term of special parole.

The evidence was primarily that of a government informer, Martin Charles Davis. Davis was a drug dealer who had become frightened when the strict New York drug laws took effect in 1973. He went to the New York City Police Department to clear his record and was asked to become an informer for them, but he declined the offer because the New York City Police were not prepared to pay any money for his informing. Later he was contacted by agents of the federal Drug Enforcement Administration (DEA) who were willing to pay him money for informing on narcotics violators. Davis accepted their offer and agreed to work on a contingent fee basis. He would be rewarded depending on the number of drug dealers he successfully introduced to DEA agents and the number of seizures made. Davis received approximately $10,000 for his own use during the time he worked for the DEA.

Davis testified that he had been introduced in 1973 to Swiderski who mentioned to Davis that he was selling tetrahydracannabinol, an illegal drug, and that he wanted Davis's assistance in finding purchasers. He further testified that, during the next

---

1. De Los Santos's conviction on the marijuana count was set aside by Judge Bonsal at sentencing.

year and a half, Swiderski had spoken with him several times about the possibility of dealing in narcotics. Davis stated that on May 31, 1975, he received a call from Swiderski, who told him that he wanted to buy cocaine. That night, Swiderski came to Davis's hotel room and, according to Davis, asked Davis if he could obtain for him a quarter of a pound of cocaine for about $4000. Davis testified that he then got in touch with a DEA agent and, after receiving clearance from the agent, called a representative of a drug dealer he knew named Carlton Bush and arranged for Bush to sell Swiderski the cocaine he requested. On June 3, 1975, Swiderski and De Los Santos, his fiancee, went to Davis's hotel room. The three of them then drove to Bush's apartment. Davis testified that Swiderski and De Los Santos made various tests to determine the quality of the cocaine and, after some hesitation, agreed to purchase it, although they felt that it was not good enough for their own personal use. Bush stated that he had only one ounce at hand at the time and that they would have to come back later to get the other three ounces. Accordingly, Swiderski gave Bush $1250 and received the one ounce of cocain in return. They agreed to meet at the apartment later that day to complete the deal. After the transaction was completed, Swiderski and De Los Santos drove Davis back to his hotel on 23rd Street.

Appellants then continued north on Eighth Avenue to Eighth Avenue and 34th Street. At this point, cars pulled both ahead of them and behind them, and armed DEA agents got out of the cars and arrested the defendants. Swiderski backed up several times in an attempt to escape from agents and, in the process, damaged the DEA cars. At the time Swiderski and De Los Santos were arrested, De Los Santos's purse was searched and found to contain an ounce of cocaine, a small vial of marijuana and $3700 in cash. Swiderski was found to have $600 in cash on his person.

Swiderski did not deny the arrest, nor his attempt to run from his pursuers. Nor did he deny that drugs and cash were found in the car he was driving. These facts were corroborated by police officers. Swiderski did deny, however, that he had instigated the transaction and contended that he had been entrapped by Davis. He testified that he had first met Davis in November 1973 and had seen him about 20 times in the next year and a half. He further testified that on May 31, 1975 Davis called him and offered to get him some marijuana. Swiderski stated that he went to Davis's hotel room and eventually decided not to purchase the marijuana, but instead purchased $65 worth of "speed." Swiderski testified that on June 1st and 2nd he did not speak to Davis because he and De Los Santos were busy attending the National Boutique Show at the McAlpin Hotel. He swore that on June 3, 1975, he intended to purchase several thousand dollars worth of merchandise for a store run by De Los Santos as well as certain clothes for his own use. That morning, he testified, Davis called him and informed him that he was able to obtain some cocaine. Swiderski said that he thought Davis's story was unbelievable. An hour later Davis called again and invited Swiderski to attend a party at which he would be "turned on." That afternoon Swiderski went with De Los Santos to the Hotel Chelsea, where he met Davis, and the three of them went to a building on West 48th Street. Swiderski testified that he went into this "creepy looking" tenement type of building "hesitantly." He stated that when he arrived at the apartment, he was given a small quantity of cocaine to "snort," after which Davis insisted that he and De Los Santos purchase the entire package of cocaine. At this point Swiderski testified that he asked Davis "how much is it going to cost me to get out of here" and he was told that it would cost $1250. He testified that he was afraid that he would be beaten up and, accordingly, gave Davis $1250. He stated that the package of cocaine was dropped into De Los Santos's handbag by some unidentified person. He further explained away the scene at which he had attempted to get away from the DEA agents by stating that he did not know that the agents, who wore dungarees,

were really policemen and that he was in fear of his life.

De Los Santos, in her testimony, to which we shall advert in more detail below, supported Swiderski's story in the main.

The jury had to decide whether to believe the testimony of Davis, who was an acknowledged narcotics dealer and who was described at trial by the government itself as "not a model citizen," "a paid headhunter" and "not a nice guy," or whether to believe the story of Swiderski and De Los Santos. The jury convicted both defendants.

I

Swiderski contends that the trial court's charge on entrapment substantially prejudiced his defense because the jury was told that the defendant had the burden of establishing the elements of entrapment by proof beyond a reasonable doubt. The government concedes that if this is what the judge charged it is error. The government contends, however, that the error was cured, taking the judge's charge as a whole.

The law in this circuit is clear that if there is evidence of initiation or inducement by a government agent, the government has the burden of proving that the defendant had a predisposition to commit the crime. *United States v. Sherman*, 200 F.2d 880, 882–83 (2 Cir. 1952). There Judge Learned Hand laid down the governing rule which analyzed the defense of entrapment as presenting two issues: "(1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence." He

added: "On the first question the accused has the burden; on the second the prosecution has it." 200 F.2d at 882–83.

We have continuously followed this rule regarding the burden of proof. For example, in *United States v. Riley*, 363 F.2d 955, 958 (2 Cir. 1966), we said that if inducement is shown "the prosecution would then have the burden of proving propensity beyond a reasonable doubt to a jury which is always free to disbelieve its witnesses." See also *United States v. Rosner*, 485 F.2d 1213, 1221–22 (2 Cir. 1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *United States v. Braver*, 450 F.2d 799, 806 (2 Cir. 1971), cert. denied, 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972); *United States v. Greenberg*, 444 F.2d 369, 371–72 (2 Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 93, 30 L.Ed.2d 93 (1971); *United States v. Bishop*, 367 F.2d 806, 809 (2 Cir. 1966). The defendants requested a proper charge which was denied,[2] and counsel objected at the conclusion of the charge that "in discussing entrapment I think you placed too heavy a burden on the defendant."

The question is whether we can square this undisputed division of the burden of proof with the judge's entire charge. We must, therefore, set it forth at length as the United States Attorney presents it to us. We have emphasized by italics the objectionable portions of the charge.

"Now, the defense of entrapment is available to Mr. Swiderski if you find that he was induced or enticed to commit the crime here which he would not otherwise have committed.

"If Davis' role was to afford Swiderski the opportunity to buy cocaine, that is not entrapment. *Here Swiderski must establish* that the idea of purchasing the

2. The defendants requested, in pertinent part, the following charge:

"If you find that the defendant has adduced some such evidence, then the government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped—that he did not need any persuasion; in short, that he was ready and willing, without persuasion, to commit the offense whenever the opportunity offered.

"To sustain its rebuttal of the defense, the government must satisfy you beyond a reasonable doubt that its agents did not seduce an innocent man, but that the transaction which the defendant engaged in that resulted from the government's action was another instance of the kind of conduct that the defendants were prepared to engage in, if given the opportunity."

cocaine originated with Davis and not with him.

"*He must show that he had no previous disposition, intent or purpose to possess or to distribute the cocaine*; that it was Davis that implanted in his mind, as an innocent person, the disposition to commit the crime of purchasing the cocaine.

\* \* \* \* \* \*

"And after you have considered this evidence determine *whether the defendant Swiderski has established here that he would not have purchased the cocaine on June 3 except for Davis' enticements, inducements, or blandishments*, if you will, and *if you find that Swiderski has shown that*, ladies and gentlemen, then the Government in addition to the elements I reviewed with you a minute ago must prove beyond a reasonable doubt that the defendant Swiderski was ready and willing to make the purchase on June 3 and that Davis merely afforded him the opportunity to do so. And if you find that the Government has not proved this beyond a reasonable doubt, then you would find the defendant Swiderski not guilty.

"But, on the other hand, if you find that the Government has proved beyond a reasonable doubt that Swiderski did knowingly, wilfully and unlawfully purchase the cocaine and that Davis merely gave him the opportunity to do it, then you may find the defendant guilty."

■ The government does not attempt to justify the objectionable language. It argues, however, that all this had been corrected. But the paragraph after the asterisks certainly does not do any correcting since it continues to impose on Swiderski the burden of establishing and showing things he had no obligation to "establish" or "show." The additional language that the government "must prove beyond a reasonable doubt that the defendant Swiderski was ready and willing to make the purchase on June 3 and that Davis merely afforded him the opportunity to do so" is all conditioned by the two preceding "if" clauses which contain the objectionable language. In our opinion, the final paragraph standing alone is not a sufficient correction to erase from the jurors' minds the erroneous burden of proof, several times emphasized.[3]

II

The judge refused to give any entrapment instruction with regard to appellant De Los Santos. She contends that it was error for the judge to refuse her request to instruct the jury to consider the defense of entrapment with respect to her as well as with respect to Swiderski. The government counters with two arguments. First, the government argues that since De Los Santos was never exposed to constant conversations with Davis, *her* willpower could not have been broken down. Thus, it argues that the trial judge was correct in his conclusion that no charge on entrapment was required because the evidence on De Los Santos did not make out an entrapment. The government argues, in addition, that a defendant who asserts inconsistent defenses—such as a denial of commission of the offense in tandem with a claim of entrapment—is never entitled to an entrapment instruction. The trial court erroneously believed that De Los Santos had testified that "she was the fiancee and she was just around, [and that] she didn't know anything about these things."

In fact, De Los Santos conceded that she had gone with Davis to a "party" where she was to be "turned on." She admitted that Swiderski purchased the ounce of cocaine from Davis in her presence and that she supplied Swiderski with the money he needed to purchase the cocaine. She admitted that someone put a bag containing white powder into her purse. She did not claim that she thought the white powder placed in her purse was something other than cocaine.

---

**3.** It is obvious that the experienced trial judge was charging in part without benefit of a prepared script. Even the most expert trial judges must falter at some time or other when delivering an extemporaneous charge, and we suggest again that on key sections of the charge it is better to use approved language that has stood the test of time.

The government's first point really asserts that there never was an inducement to De Los Santos and hence the very preliminary to a defense of entrapment was not present. That does not seem to us correct in these circumstances. She was charged with aiding and abetting Swiderski. She was his fiancee and apparently his constant companion. There is a fair inference that he told her of the importuning by Davis, if that, in fact, happened.

■ If De Los Santos was induced to aid in the purchase of cocaine by letting Swiderski take the money from her purse, the inducement, on her testimony, was the luring of appellants to a room for a party and the subsequent instilling of fear by the government informer. Under these circumstances, the evidence that she went to the hotel under a false invitation by a government agent, and not for the purpose of purchasing cocaine, was enough to make the issue of entrapment one for the jury. We think that a proper entrapment charge based on the particular evidence should have been given as to De Los Santos as well.

■ Nor do we find persuasive the government's second argument, that defendant De Los Santos's claim of entrapment was inconsistent with her claim that she did not commit the offenses charged. We need not decide whether the defense of entrapment would be available to a defendant who completely denies participation in the criminal acts alleged, or who denies any knowledge of the illegal nature of his actions.[4] Under the circumstances, we think that De Los Santos's own testimony was not inconsistent with a claim of entrapment.

### III

■ Appellants claim reversible error in the failure of the trial judge to charge, as requested, that "[t]he testimony of any informer who provides evidence against a defendant for pay . . . must be examined and weighed by the jury with greater care than the testimony of an ordinary witness" and that "[t]he jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant."

4. In *United States v. Pagano*, 207 F.2d 884, 885 (2 Cir. 1953), we held, in a per curiam opinion, that the trial judge did not err in refusing to charge entrapment where "[t]he defense was a denial that the respondent had sold any heroin at all not that he had been entrapped into making a sale." Several years later, in *United States v. Di Donna*, 276 F.2d 956 (2 Cir. 1960), we similarly held, again per curiam, that the trial judge properly refused to instruct the jury on entrapment where "the defendant himself testified that he did not know what was in the package which he admittedly delivered to the narcotics agent." But in *United States v. Bishop*, 367 F.2d 806, 809 & n. 4 (2 Cir. 1966), we said that we need not determine "whether Bishop's testimony denying the acts alleged to constitute a crime foreclosed the defense of entrapment," although we went on to cite *Pagano* and *Di Donna*. Likewise, in *United States v. Alford*, 373 F.2d 508, 509 (2 Cir.), *cert. denied*, 387 U.S. 937, 87 S.Ct. 2062, 18 L.Ed.2d 1003 (1967), we indicated that whether a defendant has a right "both to deny the transaction and 'to urge that if the jury believed it did occur the the [*sic*] government's evidence as to how it occurred indicated entrapment'" was an open question in the Circuit. We again left this question open in *United States v. Braver*, 450 F.2d 799, 802 n. 7 (2 Cir. 1971), *cert. denied*, 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972). In both *Alford* and *Braver* we noted that the District of Columbia Circuit in *Hansford v. United States*, 112 U.S.App.D.C. 359, 303 F.2d 219, 221 (1962), had stated that "[t]he defenses were alternative but not inconsistent." Most recently, in *United States v. Licursi*, 525 F.2d 1164, 1169 n. 5 (2 Cir. 1975), we again found it unnecessary to decide whether the defense of entrapment is available in this Circuit to a defendant who claims "that he is both innocent of the charges and was at the same time entrapped into committing the offense."

The other Circuits appear to be divided on this question. Compare *Sylvia v. United States*, 312 F.2d 145, 147 (1 Cir.), *cert. denied*, 374 U.S. 809, 83 S.Ct. 1694, 10 L.Ed.2d 1032 (1963); *United States v. Watson*, 489 F.2d 504, 507 (3 Cir. 1973); *McCarty v. United States*, 379 F.2d 285 (5 Cir.), *cert. denied*, 389 U.S. 929, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967); *United States v. Johnston*, 426 F.2d 112, 114 (7 Cir. 1970); and *Ortiz v. United States*, 358 F.2d 107, 108–09 (9 Cir.), *cert. denied*, 385 U.S. 861, 87 S.Ct. 114, 17 L.Ed.2d 88 (1966), with *Hansford v. United States, supra; Crisp v. United States*, 262 F.2d 68, 70 (4 Cir. 1958); and *Scriber v. United States*, 4 F.2d 97, 98 (6 Cir. 1925).

This court has said more than once that trial judges should call the jury's attention to their duty to scrutinize the testimony of accomplices and informers. See *United States v. Becker*, 62 F.2d 1007, 1009 (2 Cir. 1933); *United States v. Wilson*, 154 F.2d 802, 805 (2 Cir.), *vacated and remanded*, 328 U.S. 823, 66 S.Ct. 1363, 90 L.Ed. 1603 (1946); *United States v. Masino*, 275 F.2d 129, 133 (2 Cir. 1960); *United States v. Cianchetti*, 315 F.2d 584, 592 (2 Cir. 1963); *United States v. Abrams*, 427 F.2d 86, 90 (2 Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970). In the instant case, a charge that the jurors must scrutinize the testimony of Davis with great care would have been particularly appropriate. Davis was a paid informer who conceded that he had collected $10,000 for his undercover work. He worked on a contingent fee basis. His credibility was directly involved on the issue of entrapment. He testified, for example, that Swiderski had come to him asking to purchase cocaine. There was no corroboration of this vital testimony. The presence of the cocaine and a large amount of money and the observation of the defendants in Davis's company are all compatible with Swiderski's exculpatory version of events. In the absence of corroboration, "the problem of perjury looms large and warrants a judicial exposition of the frailties of accomplice testimony." *United States v. Lee*, 165 U.S.App.D.C. 50, 506 F.2d 111, 120 (1974), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975).

Furthermore, the judge, in his charge to the jury, characterized the defendants as "[o]bviously [having] an extremely important interest here in testifying and that is a factor, their interest you may consider." When his attention was called to his omission to give any standard "close scrutiny" charge as to Davis, the judge, rather perfunctorily, simply told the jury at the conclusion of his charge that they "might also think about whether Mr. Davis had an interest in testifying." We think that this was inadequate, in the circumstances, to cure the omission.

In view of our conclusion with regard to the entrapment charge, however, we need not determine whether the failure of the trial judge to give proper cautionary instructions on the testimony of an informer in these circumstances would itself constitute reversible error.

We have examined the other claims of error and find them to be insubstantial.[5]

The convictions are reversed and a new trial is ordered.

---

5. Appellant Swiderski asserts that, even according to the government's version of the facts, the conduct of Davis in arranging for the sale of cocaine to Swiderski exceeded the limits of permissible government conduct and thus constituted entrapment as a matter of law. In the circumstances, this argument is plainly without merit in view of the Supreme Court's recent decision in *Hampton v. United States*, —— U.S. ——, 96 S.Ct. 1646, 48 L.Ed.2d 113, 44 U.S.L.W. 4542 (1976).