669 F.2d 37
 UNITED STATES of America, Appellee,
v.
Olga VALENCIA and William Suarez Valencia, Defendants-Appellants.
 Nos. 726, 735, Dockets 79-1365, 79-1366.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 13, 1980.
Decided Sept. 18, 1980.
Orders on Rehearing and Rehearing en Banc March 5, 1981.
 
 ORDER AMENDING OPINION
 Following a Petition for Rehearing with Suggestion for Rehearing in Banc and an initial panel vote of two to one to deny the petition, the panel majority votes to and hereby Orders that part III D of its initial opinion, 645 F.2d 1158, be amended to read as follows:
 D. William's defense of entrapment.
 The most troubling question in the case relates to William Valencia's entrapment defense and the supplementary charge, note 5 supra. It was the judge's thought, and is the Government's position on appeal, that because a defendant cannot be entrapped unless he has had actual contact with a government agent who directly induced him to commit the offense, William was not entitled to have the defense of entrapment through indirect inducement go to the jury.[8] We cannot agree with this view. If a person is brought into a criminal scheme after being informed indirectly of conduct or statements by a government agent which could amount to inducement, then that person should be able to avail himself of the defense of entrapment just as may the person who receives the inducement directly.
 Our reading of United States v. Swiderski, 539 F.2d 854, 858-59 (2d Cir. 1976), is to this effect.[9] The Government argued in that case that since codefendant De Los Santos was not exposed to constant conversations with the government informant, her willpower could not have been broken down. Id. at 858. Thus the Government asserted that there never was any inducement of De Los Santos, who had been brought into the illegal activity by her fiancEe, Swiderski, who in turn had been in contact with the government agent. Id. at 859. This court rejected that argument and held that De Los Santos was entitled to an entrapment instruction, noting that, since De Los Santos was Swiderski's "fiancEee and apparently his constant companion," there was a "fair inference that he told her of the importuning by (the informant), if that, in fact, happened." Id. In the present case, there was more than simply the close marital relationship between William and Olga. Olga's testimony revealed that after the inducement to her and prior to the sale underlying the May 17, 1979 sale, Palacio, the allegedly inducing government informant, had made frequent visits to William's and Olga's apartment, which William was unable to leave because of his injuries, during which time Palacio was continually "pushing" and "coercing" Olga to sell cocaine. It also appeared, from Palacio's testimony, that William was aware that a sale was in progress the night before it took place. From all these circumstances the inference might readily be drawn that the inducement had been communicated to William.[10] In general, we hold that a vicarious entrapment defense can be presented to a jury only where the defendant first introduces admissible evidence that the agent's inducement was directly communicated to him by another. In this case, however, we remand for a determination by the trial judge whether there was sufficient evidence of direct communication between Olga and William to permit the question of inducement of William to go to the jury. If there was not, the conviction should be affirmed. If there was, William should be given a new trial.
 In Swiderski, the alleged inducement of De Los Santos took place not only through an invitation by the informant to have Swiderski attend a "party," an invitation which was conveyed to De Los Santos by Swiderski, but also through the "fear" instilled in both of them by the informant when he sought to sell them cocaine. The Government seeks to distinguish Swiderski by the fact that De Los Santos was physically present with the informant when some of the purported inducement occurred. But the court explicitly said: "(T)he inducement ... was the luring of appellants to a room for a party and the subsequent instilling of fear by the government informer." Id. at 859 (emphasis added). Accordingly, the distinction is unavailing. The Swiderski court clearly contemplated that the invitation could be considered part of the inducement of De Los Santos even though it was communicated to her by her fiancEe and not directly by a government agent. Indeed, the argument in favor of William here is stronger than it was for De Los Santos since here the indirect inducement allegedly caused William to engage in actual criminal activity, as opposed to merely causing a defendant to appear at a scene where criminal activity was to take place.[11]
 It is apparent that William could invoke the entrapment defense based on communications from Olga despite the fact that the jury found that Olga had not been entrapped. If there is sufficient evidence of inducement by a government agent to permit the case to go to the jury, then the question of entrapment turns on the individual propensity of each defendant who may have been induced. Thus, the jury might well have convicted Olga because it found that she had the propensity to commit the offense. That does not mean, however, that the jury would necessarily find that William also had such a propensity.
 The Government has another string in its bow, however, in that it argues that the defense of entrapment should not be available to a defendant who completely denies participation in the criminal acts alleged. The court in Swiderski reserved this question. 539 F.2d at 859 & n.4. As Swiderski pointed out, two cases in this circuit, United States v. Pagano, 207 F.2d 884, 885 (2d Cir. 1953) (per curiam), and United States v. Di Donna, 276 F.2d 956 (2d Cir. 1960) (per curiam), have held that it was not error for a trial judge to refuse to charge entrapment where the defendant denied knowledge of participation in any criminal activity. In United States v. Bishop, 367 F.2d 806, 809 (2d Cir. 1966), however, this court said that there was no need to decide whether a defendant's denial of "the acts alleged to constitute a crime foreclosed the defense of entrapment." Bishop took note of Pagano and Di Donna, and implicitly called those cases into question. Id. at 809 n.4. Subsequent cases in this circuit have treated this as an open question. See United States v. Alford, 373 F.2d 508, 509 (2d Cir.), cert. denied, 387 U.S. 937, 87 S.Ct. 2062, 18 L.Ed.2d 1003 (1967); United States v. Braver, supra, 450 F.2d (799) at 802 n.7 (2d Cir. 1971); United States v. Licursi, 525 F.2d 1164, 1169 n.5 (2d Cir. 1975); United States v. Swiderski, supra, 539 F.2d at 859 & n.4; United States v. Brown, 544 F.2d 1155, 1159 (2d Cir. 1976). But see id. at 1162 (Bartels, J., concurring).
 
 
 1
 The other circuits are both literally and figuratively spread all over the map on this question. Indeed, several circuits have either modified or completely changed their positions during the last decade. The First, Third, Seventh, and Tenth Circuits have never permitted a defendant to raise inconsistent defenses,[12] while the District of Columbia and Fourth Circuits have consistently permitted such defenses.[13] The Ninth Circuit used to prohibit inconsistent defenses, but now permits them.[14] The Sixth Circuit has gone in the opposite direction, since it used to allow them, but now apparently prohibits them.[15] The Fifth Circuit generally does not permit inconsistent defenses, but has created several exceptions and has begun to question the propriety of the general ban.[16] Finally, the Eighth Circuit like the Second leaves the question undecided despite earlier cases indicating inconsistent defenses were impermissible.[17]
 
 
 2
 In this situation, where the circuits appear to be in conflict, our own cases are not altogether consistent, and the Supreme Court cases do not address the question,[18] we hold that William Valencia, having put the Government on notice in counsel's opening statement of the assertion of the dual defenses of entrapment and non-involvement, is entitled to raise the defense of entrapment since he did not take the stand to deny personally his participation in the transaction and did not affirmatively introduce any other evidence that he was not involved. Although William's counsel in summation articulated his client's position that William was in no way involved in the sale of cocaine and although counsel's examination of Olga was only to elicit the response from her that William never had anything at all to do with cocaine, that is insufficient to withdraw the entrapment defense from William.
 
 
 3
 In reaching this conclusion, we need go no further than the Fifth Circuit in making the entrapment defense available to a defendant who, having duly notified the Government of the assertions of dual defenses, chooses not to testify and does not introduce any evidence inconsistent with the defense of entrapment.[19] See United States v. Groessel, 440 F.2d 602, 605 (5th Cir.), cert. denied, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). See also United States v. Demma, 523 F.2d 981, 984 (9th Cir. 1975) (en banc). We therefore need not decide whether we would follow the District of Columbia, Fourth, and Ninth Circuits in making the entrapment defense available to a defendant who actually testifies that he did not participate in the alleged criminal activity or uses alibi witnesses to make the same point.
 
 
 4
 Judgment affirmed as to Olga Valencia; reversed and remanded as to William Valencia.
 
 
 5
 JAMES L. OAKES,
 
 Circuit Judge
 
 6
 CHARLES H. TENNEY,*
 
 District Judge
 
 7
 A petition for rehearing containing a suggestion that the action be reheard in banc having been filed herein by counsel for the appellee, United States of America,
 
 
 8
 Upon consideration by the panel that heard the appeal, it is
 
 
 9
 Ordered that said petition for rehearing is DENIED, Circuit Judge VAN GRAAFEILAND dissenting.
 
 
 10
 It is further noted that a poll of the judges in regular active service having been taken on the suggestion for rehearing in banc and there being no majority in favor thereof, rehearing in banc is DENIED, Circuit Judge VAN GRAAFEILAND dissenting in a separate opinion concurred in by Circuit Judges MANSFIELD, MULLIGAN, TIMBERS and MESKILL.
 
 
 11
 VAN GRAAFEILAND, Circuit Judge (dissenting from denial of en banc):
 
 
 12
 The doctrine of stare decisis is not "an imprisonment of reason" but "neither is it a whimsy." United States v. International Boxing Club of New York, Inc., 348 U.S. 236, 249, 75 S.Ct. 259, 266, 99 L.Ed. 290 (1955) (Frankfurter, J., dissenting). "Very weighty considerations underlie the principle that courts should not lightly overrule past decisions." Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1970).
 
 
 13
 It is these considerations, perhaps, that have given rise to the commonly accepted doctrine that one Court of Appeals panel cannot overrule the decision of a prior panel but that such disregard of stare decisis requires action by an en banc court. See, e.g., Ingram v. Kumar, 585 F.2d 566, 568 (2d Cir. 1978), cert. denied, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); Timmreck v. United States, 577 F.2d 372, 376 n.15 (6th Cir. 1978), rev'd on other grounds, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); Doe v. Charleston Area Medical Center, Inc., 529 F.2d 638, 642 (4th Cir. 1975); United States v. Jenson, 450 F.2d 1258, 1264 (9th Cir. 1971), cert. denied, 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 584 (1972). Courts which espouse this doctrine usually state that panels have no authority to overrule prior panels. See United States v. Fatico, 603 F.2d 1053, 1058 (2d Cir. 1979), cert. denied, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); Doraiswamy v. Secretary of Labor, 555 F.2d 832, 847 n.119 (D.C.Cir.1976); Davis v. Estelle, 529 F.2d 437, 441 (5th Cir. 1976). However, this is somewhat of an overstatement. The doctrine of stare decisis is a moral obligation, People ex rel. Rice v. Graves, 242 App.Div. 128, 135, 273 N.Y.S. 582 (1934), aff'd, 270 N.Y. 498, 200 N.E. 288 (1936); it is not a rule of compulsion.
 
 
 14
 Although it is unusual for one panel to acknowledge that it is overruling another, but see North Carolina Utilities Commission v. F.C.C., 552 F.2d 1036, 1044-45 (4th Cir.), cert. denied, 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977), a panel may overturn precedent implicitly by simply ignoring it. Alternatively, the panel may mislabel binding precedent as dictum. Finally, and this is the most invidious alternative, the panel may misinterpret the holding of a prior panel. When a panel misconstrues what a prior panel has said, the misconstruing panel unfairly shifts the responsibility for what may be an erroneous legal concept to the shoulders of other judges. In addition, the panel is able to change the course of the law without setting forth any rationale in support of the change. I fear that this is what occurred in this case.
 
 
 15
 Rule 35(a) of the Federal Rules of Appellate Procedure provides for en banc consideration when it is necessary to secure or maintain uniformity in the decisions of the court. Because the decision of Judge Oakes, concurred in by District Judge Tenney, is at odds with prior decisions of this Court, I believe this case merits such en banc review. The failure of the necessary majority of my colleagues to agree prompts this dissent.
 
 
 16
 When the writer stated in his panel dissent that the panel majority did not correctly state the law of the Second Circuit or of any other Circuit, he was not expressing only his own opinion. Professor Roger Park, writing on entrapment in the Minnesota Law Review, says that federal courts "have universally declined to permit the defense to be raised in cases where an 'entrapment' was accomplished by a private person rather than a government agent." Park, The Entrapment Controversy, 60 Minn.L.Rev. 163, 240 (1976). The Senate Judiciary Committee, which has opted in the proposed Revised Criminal Code to base the defense of entrapment upon the "principles of the common law", see S. 1722, 96th Cong., 1st Sess. § 501 (1979), prepared a summary of what it considered that law to be. It said:A comparison of the competing views of the entrapment defense as they have emerged in the Sorrells, Sherman, and Russell line of cases reveals a considerable area of common ground occupied by the respective rationales. Under either theory, for example, entrapment may result only from governmental inducement; inducement to wrongdoing by a private person does not establish the defense....
 
 
 17
 As previously indicated, a basic element of the defense of entrapment is that the (defendant) be induced by the government. Inducement by a private party cannot form the basis for an entrapment defense. However, the entrapper need not be an official in the legal sense. It is sufficient if an agency relationship exists, such as with an informant, even if officials are not aware of the details of the informant's activities.
 
 
 18
 Senate Comm. on the Judiciary, Criminal Code Reform Act of 1977, S.Rep. No. 605, 95th Cong., 1st Sess. 117-18 (1977).[1]
 
 
 19
 The federal courts do not stand alone in requiring that entrapment be the act of the Government. Those states which have made entrapment a statutory defense uniformly provide that the inducement must come from a Government officer or his agent, see, e.g., Ga.Code Ann. § 26-905 (1978); Mont.Rev.Codes Ann. 45-2-213 (1979), a person acting "in cooperation" with the officer, see, e.g., Ark.Stat.Ann. § 41-209 (1977); Conn.Gen.Stat.Ann. § 53a-15 (West 1972); Del.Code tit. 11, § 432 (1974); Haw.Rev.Stat. § 702-237 (1976); N.H.Rev.Stat.Ann. § 626.5 (1974); N.Y.Penal Law § 40.05 (McKinney 1975); N.D.Cent.Code § 12.1-05-11 (1976); 18 Pa.Cons.Stat.Ann. § 313 (Purdon 1973), or a person acting "under the direction" of the officer, see, e.g., Colo.Rev.Stat. § 18-1-709 (1978); Utah Code Ann. § 76-2-303 (1978); Wash.Rev.Code Ann. § 9A.16.070(1) (1977).
 
 
 20
 There are several good reasons for this private-person exception to the entrapment rule. First, there is the "great danger of collusion and false claims" that would prevail in the absence of the exception. Park, supra, 60 Minn.L.Rev. at 241. Second, where, as in the instant case, the inducement is claimed to have come from a confederate of the defendant, the Government's burden of proving the defendant's willingness to accede to his confederate's promptings would in many cases be insurmountable. Finally, while arguably the lofty purpose of deterring improper police conduct and preserving respect for the criminal justice system may be served by acquitting defendants entrapped by Government agents, the same purpose would not be served by setting guilty men free who were never even in the agents' gunsights. Id. at 242-43.
 
 
 21
 When a prior panel of this Court decided United States v. Reed, 526 F.2d 740 (2d Cir. 1975), cert. denied, 424 U.S. 956, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976), it opted squarely for adherence to the traditional rule requiring that the Government have effected the inducement. In Reed, two DEA agents met with an unindicted co-conspirator of the defendant to negotiate the purchase of some cocaine. The co-conspirator made a telephone call to a "Gerry", who said that he could sell the agents a quarter kilogram of cocaine and would meet them at the co-conspirator's apartment. After Gerry met with the agents, he called his "source", who agreed to meet Gerry and the agents at a designated location. The "source" turned out to be Reed, who later was arrested.
 
 
 22
 One of Reed's arguments on appeal was that the district court had erred in refusing to charge the jury on entrapment. In response to this contention, the Government argued that the defendant could not "establish inducement from the fact that his involvement may have arisen from the actions of a co-conspirator, even though that co-conspirator may have been responding to the inducement of a Government agent or informant." (Government Brief at 24.) That is precisely the issue involved in the instant case. Our holding in Reed that "since the invitation to participate came, not from the Government but from appellant's co-conspirator, there was no question of fact on the issue of inducement", 526 F.2d at 743, would seem to be dispositive of the issues presented here.
 
 
 23
 The panel majority disposed of Reed by ignoring it. They then misconstrued United States v. Swiderski, 539 F.2d 854 (2d Cir. 1976), in a manner which, to the best of the writer's knowledge, is not concurred in by any other member of this Court, including the surviving members of the Swiderski panel. Our district court judges are now left with the task of deciding whether Reed and the similar pronouncements of this Court in United States v. Steinberg, 551 F.2d 510, 513-14 (2d Cir. 1977),[2] United States v. Braver, 450 F.2d 799, 801 n.4 (2d Cir. 1971), cert. denied, 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972),[3] United States v. Buie, 407 F.2d 905, 908 n.5 (2d Cir.), aff'd 396 U.S. 87, 89 S.Ct. 284, 24 L.Ed.2d 283 (1969), United States v. DeAlesandro, 361 F.2d 694, 698 (2d Cir.), cert. denied, 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966), United States v. Romano, 278 F.2d 202, 204 (2d Cir. 1960), United States v. Sherman, 200 F.2d 880, 882-83 (2d Cir. 1952), still correctly state the law of this Circuit, or whether trial judges henceforth must charge the novel concept of "third-party agency" which seems to have been adopted by the panel majority herein. I believe our district judges deserve some help from this Court, if only to have it explain what a "third-party agent" is.
 
 
 24
 Our failure to give this matter en banc consideration cannot be justified by the unimportance of the issue involved. A computer search conducted by Professor Park disclosed that for the years 1970 through 1974 there were 405 reported federal entrapment decisions, 65% of which involved drug offenses. 60 Minn.L.Rev. at 230. The cry "I was entrapped," heard with "mounting frequency" when United States v. Dehar, 388 F.2d 430, 432 (2d Cir. 1968) was written, continues to be heard with equal frequency today. See 18 West's Federal Practice Digest 2d Criminal Law §§ 37(1) to 37(8) (Pocket Part 1980). It is common knowledge that most drug cases involve the use of informer-solicitors. See United States v. Russell, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), Park, supra, 60 Minn.L.Rev. at 231. If the panel opinion is now the law of this Circuit, a DEA agent who hereafter solicits the sale of drugs by one person may find to his surprise that he has entrapped a nation-wide group of conspirators. If an informant pays a bribe or kickback to one officer-holder, the Government may be charged with entrapping everyone who gets a "piece of the action", even though the informant never heard of them.
 
 
 25
 I am thankful that my panel colleagues have reconsidered their original holding to the extent that they have deleted the doctrine of "inferred" inducement which they originally espoused. However, in remanding for findings by the district court, they have adhered to the proposition that Olga's conversations with her husband may be treated as an inducement by the United States Government. In the absence of any showing that Olga was acting at the instigation or behest of the Government, I respectfully submit that this is not, and should not be, the law.
 
 
 26
 I regret that a majority of my colleagues do not consider the matter of sufficient moment to warrant their consideration.
 
 
 
 [8]
 As mentioned previously, the district court did not remove from the jury's consideration the question of whether William might have been entrapped through any direct contact with either Detective Guzman or Maria Palacio
 
 
 [9]
 See also United States v. Buie, 407 F.2d 905, 908 (2d Cir.), aff'd on other grounds sub nom. Minor v. United States, 396 U.S. 87, 89 S.Ct. 284, 24 L.Ed.2d 283 (1969); Johnson v. United States, 317 F.2d 127, 128 (D.C.Cir.1963)
 
 
 [10]
 A more troublesome problem is whether a defendant may raise an indirect entrapment defense when an intermediary brings him into a scheme that was generated by a government agent, but where the defendant is not made aware of any importuning by that agent or has not been introduced to that agent. In other words, if A is a government agent who induces B and B gets C involved, and if C has no knowledge of the inducement of B by A or has never been introduced to A, can C nevertheless argue entrapment on the ground that he would not have become involved but for the original inducement by A?
 We need not decide this question in this case because, based on the circumstances of this case, it may be proven that William knew of any inducement by Palacio and hence may have been influenced by it. Moreover, William was introduced to Palacio and hence knew of her involvement. We further note that in Buie, note 9 supra, and Johnson, note 9 supra, the defendants who sought to plead indirect entrapment were eventually introduced to the government agents who allegedly provided the inducement, although it is unclear whether those defendants were told of the alleged inducement before becoming involved in the criminal activity. Accordingly, this case is distinguishable from those cases which have held that an indirect entrapment defense is unavailable where the defendant has had no contact with the government agent and where there is no indication that the alleged inducement by the agent has been related to the defendant through the intermediary. See Crisp v. United States, 262 F.2d 68, 69 (4th Cir. 1958); United States v. Dodson, 481 F.2d 656, 658 n.3 (5th Cir. 1973); United States v. Gonzales, 461 F.2d 1000, 1001 (9th Cir.), cert. denied, 409 U.S. 914, 93 S.Ct. 230, 34 L.Ed.2d 175 (1972).
 
 
 [11]
 Our dissenting brother appears to recognize the rule that entrapment may occur as the result of conduct by third-party agents of the government as well as by government officials. Quoting Lopez v. United States, 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963), the dissent states that entrapment "deals with the manufacturing of crime by 'law enforcement officials and their agents.' " From our own circuit the dissent cites the case analyzed above of United States v. Buie, note 9 supra, in which the court, approving a charge that entrapment "must be done by a government official or somebody acting under his orders and directions," 407 F.2d at 908 n.5, said, "(w)hile the entrapment defense does not extend to inducement by private citizens ... the defense is available, of course, where government agents act through private citizens." 407 F.2d at 908 (emphasis added). Cases from other circuits cited by the dissent recognizing the agency principle as shown by the dissent's own quotations include United States v. Laverick, 348 F.2d 708, 713 (3rd Cir.), cert. denied, 382 U.S. 940, 86 S.Ct. 391, 15 L.Ed.2d 350 (1965); United States v. Thompson, 366 F.2d 167, 173-76 (6th Cir.), cert. denied, 385 U.S. 973, 87 S.Ct. 512, 17 L.Ed.2d 436 (1966); United States v. Mayo, 498 F.2d 713, 716 (D.C.Cir.1974)
 The dissent does not address what we think is the closer question, whether the third-party agent may be unwitting, perhaps because that question was answered affirmatively in Johnson v. United States, note 9 supra, which in turn was cited with approval not only in its own circuit, United States v. Mayo, supra, 498 F.2d at 716 nn.5 & 6, but in our own, United States v. Buie, supra, 407 F.2d at 908. See note 10 supra.
 
 
 [12]
 The First Circuit has noted "the settled principle that a defendant's testimony to the effect that he did not commit the crime cannot raise an issue of entrapment." Sylvia v. United States, 312 F.2d 145, 147 (1st Cir.), cert. denied, 374 U.S. 809, 83 S.Ct. 1694, 10 L.Ed.2d 1032 (1963). More recently it has stated: "Under the law of this Circuit it is clear that the issue of entrapment does not arise until a defendant admits commission of the crime charged but asserts that the offense was instigated by the actions of the law-enforcement officers." United States v. Caron, 588 F.2d 851, 852 n.4 (1st Cir. 1978) (emphasis added). The Third Circuit has also held that a defendant who "did not admit the crime charged ... was not entitled to any entrapment instruction." United States v. Watson, 489 F.2d 504, 507 (3d Cir. 1973). See United States v. Shoup, 608 F.2d 950, 964 (3d Cir. 1979); United States v. Levin, 606 F.2d 47, 48 (3d Cir. 1979) (per curiam). The rule in the Seventh Circuit is otherwise that "absent admission of the act an instruction on entrapment will not be submitted to the jury." United States v. Johnston, 426 F.2d 112, 114 (7th Cir. 1970). See Burris v. United States, 430 F.2d 399, 403 (7th Cir. 1970), cert. denied, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971). The Tenth Circuit has adopted a similar rule "that an accused cannot raise the defense of entrapment unless he admits to the commission of the crime charged." United States v. Gibson, 446 F.2d 719, 722 (10th Cir. 1971). See Martinez v. United States, 373 F.2d 810, 811-12 (10th Cir. 1967). But that court has slightly modified its rule by stating "that testimony from an accused is not prerequisite to his reliance upon the defense of entrapment." United States v. Worth, 505 F.2d 1206, 1209 (10th Cir.), cert. denied, 420 U.S. 964, 95 S.Ct. 1358, 43 L.Ed.2d 443 (1975). Thus, an affirmative admission by a defendant is apparently not required in that circuit so long as he has not actually denied the acts alleged
 
 
 [13]
 In Hansford v. United States, 303 F.2d 219, 221 (D.C.Cir.1962) (en banc), an opinion in which Chief Justice (then Judge) Burger joined, the District of Columbia Circuit said that "(i)t was consistent with defendant's denial of the transaction to urge that if the jury believed it did occur the government's evidence as to how it occurred indicated entrapment." See United States v. Neuman, 436 F.2d 285, 286 n.1 (D.C.Cir.1970) (per curiam), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). The Fourth Circuit in Crisp v. United States, note 10 supra, 262 F.2d at 70, similarly held that it was "perfectly proper to allow a criminal defendant to submit to a jury (the) alternative defenses" of denial of guilt (of a narcotics sale) and entrapment
 
 
 [14]
 The Ninth Circuit in United States v. Demma, 523 F.2d 981, 985 (9th Cir. 1975) (en banc), overruling a line of cases beginning with Eastman v. United States, 212 F.2d 320 (9th Cir. 1954), per Judge Hufstedler, held "that a defendant may both deny the acts and other elements necessary to constitute the crime charged and at the same time claim entrapment." The court noted that the former rule against inconsistent defenses in the context of entrapment was "without any justification." Id
 
 
 [15]
 In Scriber v. United States, 4 F.2d 97, 98 (6th Cir. 1925), the Sixth Circuit explained: "A jury might conclude that defendant's claim of good intent was untrue ..., but might also conclude that he had been by the government officers unduly persuaded and influenced into the crime and thus ought not to be held guilty." Citing Scriber with approval, the same court held in United States v. Baker, 373 F.2d 28, 30 (6th Cir. 1967), that a defendant was not precluded from raising an entrapment defense even though he testified that he did not know that the box of pills he sold to a government agent contained morphine. In United States v. Shameia, 464 F.2d 629, 631 (6th Cir.), cert. denied, 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972), however, the Sixth Circuit held "that the defendant may not absolutely deny every act necessary to constitute the offense and then claim entrapment on the part of the Government agents." Shameia did not mention Scriber and sought to limit Baker to the situation in which the defendant at least admitted the acts bringing him into contact with the agent. Id. at 630-31. Even this last vestige of the Scriber and Baker rules vanished, however, in United States v. Mitchell, 514 F.2d 758 (6th Cir.), cert. denied, 423 U.S. 847, 96 S.Ct. 86, 46 L.Ed.2d 68 (1975). In Mitchell, the defendant admitted receiving money from a government agent, but denied guilty intent in a fashion similar to the defendants in Scriber and Baker. The Sixth Circuit, citing neither of those cases, held that "the district judge properly precluded appellant from relying on the defense of entrapment." Id. at 761. Indeed, Mitchell cited with approval United States v. Barrios, 457 F.2d 680 (9th Cir. 1972), which is squarely contrary to Baker on this issue. Id
 
 
 [16]
 In Henderson v. United States, 237 F.2d 169, 173 (5th Cir. 1956), that court established a test that some inconsistency in defenses was permissible as long as "(t)he two defenses do not seem to us so repugnant that proof of one necessarily disproves the other." Thus, the court held that the defendant was entitled to an entrapment instruction where he admitted committing overt acts in furtherance of a conspiracy, but denied knowledge of the conspiracy. This reasoning was elaborated in Sears v. United States, 343 F.2d 139 (5th Cir. 1965), where the defendant denied not only knowledge of the conspiracy, but also the very acts which allegedly made him a part of the conspiracy; it was held that he was entitled to an entrapment charge since he did not introduce contradictory evidence of entrapment himself, but instead relied on the Government's evidence that there was entrapment. Id. at 143. Later cases have, however, limited Sears to the situation in which a defendant admits committing the overt acts alleged, but denies participation in a conspiracy, as in Henderson, supra. United States v. Pickle, 424 F.2d 528, 528 (5th Cir. 1970); McCarty v. United States, 379 F.2d 285, 286-87 (5th Cir.), cert. denied, 389 U.S. 929, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967); Beatty v. United States, 377 F.2d 181, 186 & n.9 (5th Cir.), rev'd on other grounds, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967). Later cases have also restricted a defendant's right to raise inconsistent defenses even further by stating that a defendant could only argue entrapment in a conspiracy case if he admitted a culpable overt act, not one that was merely innocent. United States v. O'Leary, 529 F.2d 1202, 1203 (5th Cir. 1976) (per curiam); United States v. Newcomb, 488 F.2d 190, 192 (5th Cir.) (per curiam), cert. denied, 417 U.S. 931 (1972). Another case has stated that Sears creates an exception limited "to the situation where the Government's own case in chief injects substantial evidence to support a theory of entrapment." United States v. Morrow, 537 F.2d 120, 138-39 (5th Cir. 1976), cert. denied, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). See also United States v. Newcomb, supra, 488 F.2d at 191-92. One case has permitted an entrapment defense where a defendant does not admit participation in the acts, as long as he has not actually taken the stand to deny the acts so that "no evidence inconsistent with the defense of entrapment was introduced." United States v. Groessel, 440 F.2d 602, 605 (5th Cir.), cert. denied, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). More recently, United States v. Greenfield, 554 F.2d 179 (5th Cir. 1977), added another exception that a defendant could raise entrapment if he admitted the physical acts alleged, but argued that he lacked criminal intent. Id. at 182-83. Finally, United States v. Daniels, 572 F.2d 535, 542 (5th Cir. 1978), questioned the continued validity of the general rule "that a defendant can raise the entrapment defense only if he admits commission of the underlying offense." The court noted that "(t)his theory justifiably has been attacked by this court and by other courts." Id. (emphasis added). The court did not abandon that rule, however, choosing instead to bring the case within the exception that "the government's own evidence raised the issue of entrapment." Id
 
 
 [17]
 Compare Kibby v. United States, 372 F.2d 598, 601 (8th Cir.), cert. denied, 387 U.S. 931 (1967) (question undecided), with Ware v. United States, 259 F.2d 442, 445 (8th Cir. 1958) (denial precludes defense)
 
 
 [18]
 See United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)
 
 
 [19]
 Since an entrapment defense still cannot be raised without some evidence of inducement by a government agent, a defendant who wishes to argue entrapment will often, as a practical matter, still have to admit participation in the criminal activity notwithstanding the rule that we have announced. See United States v. Demma, note 14 supra, 523 F.2d at 985. Here, however, William was fortunate because his codefendant, Olga, furnished the necessary evidence of inducement so that he himself did not have to provide such evidence and thereby admit his involvement in the transaction. By trying the defendants jointly, the Government took its chances that this would occur
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 In 1971, the United States National Commission on Reform of Federal Laws provided at section 702(2)(e) of its Proposed New Federal Criminal Code that "entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense." See also 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 13.09 (3d ed. 1977) and U.S. District Judges Association (5th Cir.), Committee on Pattern Jury Instructions, Criminal § 5 (1979)
 
 
 [2]
 "The defense of entrapment is designed to protect innocent peoples from being convicted for crimes that government agents have unfairly tricked or persuaded them into committing." 551 F.2d at 513
 
 
 [3]
 "The question of entrapment involves two issues. The first issue is whether the defendant was led or induced to commit the crime by anyone acting for the government." 450 F.2d at 801 n.4